637 P.2d 539

**SECURITY BANK & TRUST, a New Mexico Banking corporation, Plaintiff-Appellant and Cross-Appellee,**

v.

**Don PARMER, Mountain Meadows, Inc., a New Mexico corporation, and Mountain Properties, Limited, a New Mexico corporation, Defendants-Appellees and Cross-Appellants.**

No. 13559.

Supreme Court of New Mexico.

Nov. 17, 1981.

Rehearing Denied Dec. 18, 1981.

Durrett, Jordon & Grisham, Charles W. Durrett, Alamogordo, for plaintiff-appellant and cross-appellee.

Walter Parr, Las Cruces, for Parmer.

Jennings & Christy, Dean Constantine, Roswell, for Mountain Meadows.

## OPINION

SOSA, Senior Justice.

This is an appeal and cross-appeal from the district court's granting of a summary judgment in favor of appellee.

In order for the trial court to have properly granted summary judgment, the pleadings, depositions, exhibits and affidavits must have shown that there was no genuine issue as to any material fact and that the moving party was entitled to summary judgment as a matter of law. N.M.R.Civ.P. 56(c), N.M.S.A.1978 (Repl. Pamp. 1980). We find that there is a genuine issue as to a material fact and reverse the district court, and remand for a trial on the merits.

The following facts gave rise to this appeal. Prior to 1978, Cloud 9, Ltd. (Cloud 9) purchased approximately 1,222 acres of land located in Otero County subject to a note in favor of Security Bank and Trust (Bank). Five hundred fifty acres of the 1,222 acres were subject to an existing real estate contract held by Mountain Meadows, Inc. (MMI). In 1978, Cloud 9 defaulted in payment. The Bank then entered into an extension and modification agreement with Cloud 9, whereby Cloud 9 was required to sell the 1,222 acres to a third party or face foreclosure. Don Parmer (Parmer) was contacted as a prospective purchaser. He gave, as a down payment to Cloud 9, 175 lots in southern Colorado and executed a

note with the Bank for the balance (Parmer transaction).

The Bank then entered into an agreement with MMI, whereby MMI would relinquish its ownership position in the 550 acres in consideration for $130,000.00 cash and a $280,000.00 promissory note secured by a second mortgage on the entire 1,222 acres which would be subordinate to the Bank's mortgage.

In 1979, Parmer defaulted. The Bank brought a foreclosure action against Parmer and sought to establish the priority of its mortgage over that of MMI. MMI counterclaimed for a return of the 550 acres, alleging that a representative of the Bank fraudulently misrepresented the value of the lots given by Parmer as down payment in the Parmer transaction. MMI then moved the district court for summary judgment on two grounds; one of which was:

> [t]hat Bank, to induce Movant to subordinate its Seller's interest in a real estate contract covering a portion of the S ubject [sic] Property, and receive a second Mortgage on the Subject Property, negligently misrepresented to Movant that Parmer was making a substantial down payment of a value of at least $544,000.00 to acquire the Subject Property in the Parmer Transaction.

■ For purposes of its motion, MMI assumed that a Bank representative advised MMI that Parmer gave 170 lots in Colorado to Cloud 9 as down payment in the Parmer transaction, and that Cloud 9 and Parmer agreed to value the lots at $544,000.00. MMI had the burden of proving that the value of the lots was misrepresented, and that no genuine issue as to the misrepresentation existed which would require resolution by the trier of fact. *Akre v. Washburn*, 92 N.M. 487, 590 P.2d 635 (1979). If one issue of material fact existed, summary judgment was inappropriate. *Fidelity Nat. Bank v. Tommy L. Goff, Inc.*, 92 N.M. 106, 583 P.2d 470 (1978). Until MMI had made its prima facie case, the Bank and Parmer were not required to make a showing of factual issues. *Steadman v. Turner*, 84 N.M. 738, 507 P.2d 799 (Ct.App.1973).

■ In its attempt to make its prima facie case, MMI argued that the undisputed facts showed that the lots were only worth $17,500.00, or $100.00 each. In support of this position, MMI in its motion only focused on the following deposition testimony of Gary McPherson (McPherson), a representative of the Bank.

Q  What did you find out concerning the value of these lots, or did you find out enough to satisfy yourself with regard to the value?

A  An appraisal of those lots was provided by Mr. Han, signed by a realtor out of Colorado, in which an assigned value of some forty-two hundred fifty dollars was assigned to those lots. In discussing with various individuals in that county in Colorado, I found the value would have been more appropos of a hundred dollars per lot.

Q  In other words, the valuation that had been given to you was way off on the lots?

A  Yes, sir.

Q  Where did you obtain this valuation?

A  From Mr. Sorrells.

Q  How did you reach the conclusion that the lots were worth a hundred dollars per lot?

A  In conversations with various individuals in that Colorado county.

Q  Generally, what did you learn concerning those lots and their value?  What made them so—of such a small value?

A  The quality of the land, the lack of amenities connected with the subdivision. It was basically high sage-brush country, bulldozed roads, no amenities, no natural, you know, pine trees, flowing streams and whatever, that would make it a good quality, you know, mountain lot.  And there had been very few cash sales of those lots recorded at the title company.

McPherson then proceeded to testify that the lots had a value of $17,500.00 as opposed to $600,000.00, although he did not receive written documentation to that effect. He also stated that he conveyed this information to the Bank before the Subordination Agreement had been closed.

After reviewing this evidence and the record as a whole, *C & H Const. & Paving Co. v. Citizens Bank*, 93 N.M. 150, 597 P.2d 1190 (Ct.App.1979), we conclude that a genuine issue existed as to whether the Bank had misrepresented the value of the Parmer down payment. McPherson also testified that the lots had each been appraised at $4,250.00 by a Colorado appraiser. The record contains a letter addressed to Parmer and signed by Bill Ragle wherein Ragle states that due to the strictness of the Colorado law in regard to subdivisions the lots owned by Parmer should each be valued at approximately $4,250.00. This would give the lots a total value well in excess of that represented by the Bank.

 MMI argues that this letter should be disregarded since no foundation had been laid for its admissibility. We disagree. During the deposition of Dan Sorrells, the letter was marked as defendant Parmer's Exhibit Number 2 to Sorrells deposition. No objection was made to its admissibility then, and nothing in the record indicates an objection at the hearing on MMI's motion for summary judgment. "Failure to object to the admission of evidence constitutes a waiver of objection, and in such case the objection cannot be raised for the first time on appeal." *McCauley v. Ray*, 80 N.M. 171, 453 P.2d 192 (1968) (decided before enactment of N.M.R.Evid. 103, N.M.S.A.1978).

Since McPherson testified as to two different values of the lots in Colorado, there existed conflicting testimony in his deposition. Where such a conflict exists it is for the trier of fact to resolve. *Hinojosa v. Nielson*, 83 N.M. 267, 490 P.2d 1240 (Ct. App.), *cert. denied*, 83 N.M. 259, 490 P.2d 1232 (1971). The courts in ruling on a summary judgment motion cannot weigh factual conflicts and decide issues of credibility. *Steadman, supra.*

The trial court erred in granting summary judgment in favor of MMI, since a genuine issue of material fact existed requiring submission of the issues to the trier of fact.

The Bank's next contention, joined by cross-appellant, Parmer, is that if the summary judgment of the trial court were affirmed, the remedy fashioned would be incorrect. Disposition of the first issue makes it unnecessary to decide this issue.

The trial court's summary judgment is reversed and this cause is remanded for a trial on the merits.

IT IS SO ORDERED.

EASLEY, C. J., and PAYNE, J., concur.