745 P.2d 380

**Manuel F. SILVA, et al., Petitioners,**

v.

**STATE of New Mexico, et al.,
Respondents.**

**No. 16798.**

Supreme Court of New Mexico.

Nov. 3, 1987.

Ray M. Vargas, Albuquerque, for petitioners.

Keleher & McLeod, Judith L. Durzo, Rebecca A. Houston, Albuquerque, for respondents.

William H. Carpenter, Albuquerque, for amicus curiae N.M. Trial Lawyers Ass'n.

Douglas A. Baker, Charles E. Stuckey, Albuquerque, for amicus curiae N.M. Defense Lawyers Ass'n.

## OPINION

RANSOM, Justice.

This case is before the Court on a writ of certiorari to the court of appeals to review an opinion on interlocutory appeal which affirmed the ruling of the court below that plaintiffs were not entitled to partial summary judgment of liability. Plaintiffs had sought partial summary judgment on the grounds of claim or issue preclusion arising out of prior action taken by the United States District Court for the District of New Mexico. Also on review is the affirmance of the trial court's dismissal of a direct action under the Tort Claims Act against the state, the Corrections and Criminal Rehabilitation Department of the State of New Mexico (Corrections Department), and the Secretary of Corrections. This question, as it relates to the applicability of *respondeat superior*, has been briefed for us by the New Mexico Trial Lawyers Association and the New Mexico Defense Lawyers Association. These excellent briefs by friends of this Court have been of significant aid.

This action was brought seeking damages for the wrongful death of Manuel Silva (Silva) who committed suicide by hanging while incarcerated at a facility of the Corrections Department. Because of psychiatric problems, Silva was held at a facility where he could receive medication; and it was known that special care was required to prevent his suicide. Negligent failure to provide that care was the alleged cause of Silva's suicide.

The defendants included the state, the Corrections Department, and the Secretary of Corrections (Francke), and other law enforcement officers and health care providers. Moving the court for partial summary judgment on the issue of defendants' liability, plaintiffs relied upon the doctrines of *res judicata* (claim preclusion) or, alternatively, upon collateral estoppel (issue preclusion). The motion was based on an order entered by the federal court in *Duran v. Anaya*, No. 7-721-JB, on unchallenged findings of a special master who conducted an evidentiary hearing into the events and circumstances surrounding Silva's death. *Duran* is a class action in which partial consent decrees and an agreement were approved and adopted on July 14, 1980, requiring the State of New Mexico, its Corrections Department and its Secretary of Corrections to operate by certain standards, procedures and policies for the benefit of a class of inmates to which Silva belonged.

The federal court found that Francke and others connected with the Corrections Department failed to operate by standards and procedures required by the consent decree. These included staffing, training

and provision for facilities which would have provided Silva a course of treatment and acute mental health care to address the mental disorder undergirding his basic prison classification and to address his immediate symptoms of depression and suicidal ideation. Also, adherence to required standards and procedures would have caused Silva to be placed on a suicide watch and would have otherwise protected him from a suicide attempt or aided in his resuscitation.

■ Application of the doctrine of *res judicata*, or "claim preclusion," depends upon identity of prior and subsequent actions in four respects: (1) parties or privies, (2) capacity or character of persons for or against whom the claim is made, (3) cause of action, and (4) subject matter. *Three Rivers Land Co. v. Maddoux*, 98 N.M. 690, 652 P.2d 240 (1982); *Adams v. United Steelworkers of Am., AFL–CIO*, 97 N.M. 369, 640 P.2d 475 (1982). When the duty sued upon stems from different roots in the prior and subsequent actions, even if both actions involve essentially the same course of wrongful conduct, it is indicated that the suits arise from different causes of action. *Adams*, 97 N.M. at 373, 640 P.2d at 479. Here, suffice to say, the hearing ordered by the federal court to inquire into whether the defendants in *Duran* were in compliance with the "consent decree" with respect to the events and circumstances surrounding Silva's death was not the same cause of action as the personal representatives' action for wrongful death. Where the ultimate facts necessary for the resolution of two suits are different, and the issues necessarily dispositive in the prior cause are different from those in the subsequent cause, the doctrine of *res judicata* is inapplicable. *Torres v. Village of Capitan*, 92 N.M. 64, 68, 582 P.2d 1277, 1281 (1978).

> [W]here the causes of action in the cases are identical in all respects, the first judgment is a conclusive bar upon the parties and their privies as to every issue which either was or properly could have been litigated in the previous case. But absent the identity of causes of action, the parties are precluded from relitigating only those ultimate issues and facts shown to have been actually and necessarily determined in the previous litigation.

*City of Santa Fe v. Velarde*, 90 N.M. 444, 446, 564 P.2d 1326, 1328 (1977).

Collateral estoppel bars relitigation of ultimate facts or issues actually and necessarily decided in a prior suit. Under collateral estoppel, or "issue preclusion," the cause of action in the second suit need not be identical with the first suit. *Adams v. United Steelworkers of Am., AFL–CIO; see Torres v. Village of Capitan; City of Santa Fe v. Velarde;* and *Edwards v. First Fed. Sav. & Loan Ass'n of Clovis*, 102 N.M. 396, 400, 696 P.2d 484, 488 (Ct. App.1985) (with analysis of "issues actually and necessarily decided").

It is clear from the cited New Mexico authorities that, in deciding whether to apply the doctrine of collateral estoppel, the trial judge may determine that its application would be fundamentally unfair and would not further the aim of the doctrine, which is to prevent endless relitigation of issues. Fundamental fairness requires that the party against whom estoppel is asserted had a full and fair opportunity to litigate. To give rise to estoppel, the finding of ultimate facts in the prior action must have been final. *See C & H Constr. & Paving Co. v. Citizens Bank*, 93 N.M. 150, 160–61, 597 P.2d 1190, 1200–01 (Ct. App.1979). Also, for application of collateral estoppel, New Mexico has adhered to the rule that the parties in the second suit must be the same or in privity with the parties in the first suit. A growing number of jurisdictions hold that, absent fundamental unfairness in a given case, the doctrine of collateral estoppel may be applied against parties or their privies to both suits regardless of whether the party asserting the doctrine was privy to the first suit.

The reason given for the "same parties" requirement is the doctrine of mutuality. The mutuality requirement prevents a litigant from invoking the conclusive effect of a judgment unless that litigant would have been bound if the judgment had gone the other way. Dis-

satisfaction with the mutuality requirement resulted in a "modern" view of mutuality, which dispenses with the "same parties" requirement. *Atencio v. Vigil,* 86 N.M. 181, 521 P.2d 646 (1974). The modern view has two aspects—defensive collateral estoppel, *see Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), and offensive collateral estoppel, *see Parklane Hosiery Co. v. Shore* [439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)].

*Edwards,* 102 N.M. at 401, 696 P.2d at 489. In *Edwards,* defensive collateral estoppel was allowed despite defendant's not having been a party to a prior federal court action brought by Edwards against the United States claiming that a tax was wrongfully levied on First Federal Savings & Loan Association of Clovis.

The *Edwards* court held that the federal law of collateral estoppel governs the preclusion effect of the federal judgment in a case which decided a federal question, and that the application of collateral estoppel in federal courts is not grounded upon the "mechanical requirement of mutuality," but is tested by whether a litigant has had a "full and fair opportunity for a judicial resolution" of the issue. In the subsequent suit for damages against First Federal, Edwards claimed First Federal's response to the levied tax was to unlawfully use trust funds rather than the personal funds of the taxpayer. To the contrary, in his memorandum opinion, the federal judge had stated that, "[b]ecause the Trust is a nullity and sham for tax purposes, property held in the name of the Trust is not shielded from levy by the government." The showing by First Federal in support of summary judgment based upon the use of collateral estoppel as a complete defense to Edward's claim consisted of the memorandum and decision in the federal suit. This satisfied movant's burden of showing a prima facie case for summary judgment. The federal judgment, deciding a federal question, precluded in subsequent state proceedings any issue which was actually and necessarily decided in the federal suit. It was then respondent's burden to show there was a

factual issue as to a full and fair opportunity to litigate. Respondent did not do so. To the extent the court of appeals affirmed the summary judgment on the basis of defensive collateral estoppel, we specifically approve Judge Wood's excellent opinion in *Edwards.*

Plaintiffs in the present case, however, assert the offensive use of collateral estoppel as adopted in *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), a stockholder's action against a corporation, its officers, directors and others who were claimed to have issued false and misleading proxy statements. Before the action came to trial, the Securities and Exchange Commission sued the same defendants and obtained a declaratory judgment based upon findings that the proxy statement was false and misleading in essentially the same respects claimed by Shore in his suit. As did the plaintiffs in the present case, Shore moved for partial summary judgment asserting that Parklane, its officers, directors and other defendants were collaterally estopped from relitigating the issues that had been resolved against them in the action brought by the SEC.

In *Parklane Hosiery Co.,* the Supreme Court adopted a general rule that a trial judge may allow the use of offensive collateral estoppel except in cases where a plaintiff could easily have joined in the earlier action or where the application of offensive estoppel would be unfair to a defendant. Unfairness was discussed as arising where a defendant had little incentive to defend vigorously in the first suit, where the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant, or where the second action affords the defendant procedural opportunities unavailable in the first action that could have easily caused a different result. *Id.* at 330–31, 99 S.Ct. at 651–52. It was also noted that the presence or absence of a jury as fact finder is basically neutral, quite unlike, for example, the necessity of defending the first lawsuit in an inconvenient forum. *Id.* at 352 n. 19, 99 S.Ct. at

662. As to constitutional rights to a jury trial, the court held that, regardless of whether the party against whom estoppel is asserted has previously lost because of adverse factual findings in law or in equity, by jury verdict or court decision, there is no further fact-finding function for a jury to perform in the subsequent action, since the common factual issues have been resolved in the previous action. *Id.* at 335–36, 99 S.Ct. at 653–54; *cf. Ex parte Peterson*, 253 U.S. 300, 310, 40 S.Ct. 543, 546, 64 L.Ed. 919 (1920) ("No one is entitled in a civil case to trial by jury unless and except so far as there are issues of fact to be determined.").

■ In accordance with the principles discussed herein, we hold that the doctrine of defensive collateral estoppel may be applied when a defendant seeks to preclude a plaintiff from relitigating an issue the plaintiff has previously litigated and lost regardless of whether defendant was privy to the prior suit; and that the doctrine of offensive collateral estoppel may be applied when a plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully regardless of whether plaintiff was privy to the prior action.

■ The trial court is in the best position to decide whether a party against whom estoppel is asserted has had a full and fair opportunity to litigate. Neither the offensive or defensive use of collateral estoppel is to be applied where the record is insufficient to determine what issues were actually and necessarily determined by prior litigation, *Howell v. Anaya*, 102 N.M. 583, 698 P.2d 453 (Ct.App.), *cert. denied*, 102 N.M. 613, 698 P.2d 886 (1985), and it is the burden of the movant invoking the doctrine of collateral estoppel to introduce sufficient evidence for the court to rule whether the doctrine is applicable. *International Paper Co. v. Farrar*, 102 N.M. 739, 700 P.2d 642 (1985). When the movant has made a prima facie showing, the trial court must consider the countervailing equities including, but not limited to, prior incentive for vigorous defense, inconsistencies, procedural opportunities, and incon-

venience of forum as discussed in *Parklane Hosiery Co.* Although the Supreme Court also noted that the presence or absence of a jury is basically neutral, we do not believe such a fact to be altogether immaterial. To be similarly considered is the use of a special master or other alternative or administrative dispute resolution techniques in the prior litigation.

In the present case, we do not know whether, in denying the plaintiffs' motion for partial summary judgment on defendants' liability, the trial court determined either finality of issues actually and necessarily decided, or issues of fairness. The court found only that questions of material fact exist. This could be interpreted as meaning that, because the doctrine of offensive collateral estoppel had not been adopted in New Mexico, no fact issues had been precluded. In deciding whether to apply the doctrine of collateral estoppel, the threshold issues of fact are for the court to resolve. It does not appear that the court exercised discretion in deciding finality or fairness because it determined that the decision involved a controlling question of law as to which there is substantial ground for difference of opinion. In due course, leave to file this interlocutory appeal was granted.

■ We could remand for the trial court to reconsider the motion for partial summary judgment in accordance with the law articulated in this opinion. However, it is the opinion of this Court that, as a matter of law, the federal court did not actually and necessarily make a final determination that any failure of defendants to exercise ordinary care was a proximate cause of Silva's death. These are the ultimate fact issues in question. Failure to operate by standards and procedures required by the consent decree is not a matter which subjects defendants to offensive use of collateral estoppel. Under the consent decree, the agreement specifically purports not to establish standards of culpability for civil liability.

■ As to whether a direct action lies against the state and its entities under the Tort Claims Act, NMSA 1978, Sections 41–

4-1 through 41-4-29 (Repl.Pamp.1986 & Cum.Supp.1987), we believe that the court of appeals was correct in *Abalos v. Bernalillo County Dist. Attorney's Office*, 105 N.M. 554, 734 P.2d 794 (Ct.App.), *cert. quashed*, 106 N.M. 35, 738 P.2d 907 (1987), specifically modifying *Silva v. State*, the case presently before us. A governmental entity is not immune from liability for any tort of its employee acting within the scope of duties for which immunity is waived. NMSA 1978, § 41-4-4(A). When the act of the employee is the act of the public entity, let the master answer. To the extent that prior cases have rejected the applicability of the tort doctrine of *respondeat superior* under the Tort Claims Act, e.g., *Wittkowski v. State*, 103 N.M. 526, 710 P.2d 93 (Ct.App.), *cert. quashed*, 103 N.M. 446, 708 P.2d 1047 (1985), those cases are hereby overruled. As stated in *Abalos:*

> To name a particular entity in an action under the Tort Claims Act requires two things: (1) a negligent public employee who meets one of the waiver exceptions under Sections 41-4-5 to -12; and (2) an entity that has immediate supervisory responsibilities over the employee. If a public employee meets an exception to immunity, then the particular entity that supervises the employee can be named as a defendant in an action under the Tort Claims Act. If the city or state directly supervises the employee, then the city or state can be named.

105 N.M. at 559, 734 P.2d at 799. It is only when a public employee is acting within the scope of his employment and in furtherance of the business of a public entity that immunity and the Tort Claims Act have any relevance. *See Garcia v. Albuquerque Pub. Schools Bd. of Educ.*, 95 N.M. 391, 622 P.2d 699 (Ct.App.1980) (Sutin, J., specially concurring), *cert. quashed*, 95 N.M. 426, 622 P.2d 1046 (1981); *cf. Candelaria v. Robinson*, 93 N.M. 786, 606 P.2d 196 (Ct.App.1980). Therefore, it is only when the public entity is itself acting through its employee with the right to control the manner in which the details of work are to be done, SCRA 1986, 13-403, that the Tort Claims Act comes into play. The public entity can act only through its employees, and the act of the offending employee is the act of the public entity under traditional tort concepts. *Cf.* SCRA 1986, 13-409.

While the *Abalos* court has held that, "[i]f the city or state directly supervises the employee, then the city or state can be named," we believe that traditional tort law requires that statement to be interpreted to include the right of control regardless of whether exercised. Public policy recognizes the inherently unfair and inequitable results which occur in the strict application of the doctrine of sovereign immunity. NMSA 1978, § 41-4-2(A). While the court may apply the doctrine of remoteness in striking the state or city as a named defendant, the court must be constrained in each instance to avoid inherently unfair and inequitable results. Adherence to a principle of "direct supervision" should never be used to defeat totally a claim which otherwise has been brought under traditional concepts of *respondeat superior*. In the present case, we do not know whether the trial court exercised its discretion in granting defendants' motion for dismissal of the state. The dismissal of the state and the Corrections Department is reversed and, on remand, the trial court may reconsider the motion for dismissal of the state in terms of the doctrine of remoteness.

The trial court erred in concluding that certain statutory waivers of immunity were inapplicable as a matter of law to the acts or omission of Francke while acting within the scope of his duties as Secretary of Corrections. No public employee is immune from tort liability while acting within the scope of duty where immunity has been waived by one or more of the eight sections of specified exceptions. NMSA 1978, § 41-4-4. Of the eight sections, four are arguably applicable here. These include duties in the operation or maintenance of any building, machinery, equipment, or furnishings (41-4-6), duties in the operation of any hospital, infirmary, mental institution, clinic, dispensary, medical care home or like facilities (41-4-9), duties of providing health care services (41-4-10), or depriva-

tion of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties (41–4–12). This Court has held that the Secretary of Corrections is not a law enforcement officer within the meaning of Section 41–4–12 as defined in Section 41–4–3(D). *Anchondo v. Corrections Dep't,* 100 N.M. 108, 666 P.2d 1255 (1983). Therefore, Franke cannot be held liable under the waiver of immunity in that section. However, as pointed out in *Anchondo,* the duties of the Secretary of Corrections require that he manage all operations of the department, exercise general supervisory authority over all department employees, organize the department into the most efficient organizational units, and issue and enforce orders and instructions. It will be for the finder of fact to determine whether Francke failed to exercise ordinary care in the discharge of these duties as they may be found to include the operation or maintenance of the corrections and medical care facilities and health care services proximately related to the death of Silva.

■ While Francke may be liable for negligent performance of a duty, he is not subject to liability because of the negligent act or omission of some other employee, merely because of his executive position. *See Clark v. Ruidoso–Hondo Valley Hosp.,* 72 N.M. 9, 380 P.2d 168 (1963). We hold only that Francke's management and enforcement duties may be found to have included staffing, training and provision for facilities which would have provided Silva a course of treatment, health care and protection to address the mental disorder undergirding his basic prison classification.

■ Failure of an employee to operate in compliance with practices adopted by a governmental entity for the welfare of persons similarly situated to the plaintiff constitutes evidence of negligence in a tort action. *Petznick v. United States,* 575 F.Supp. 698 (D.Neb.1983); *Dillenbeck v. City of Los Angeles,* 69 Cal.2d 472, 446 P.2d 129 (1968). Under the terms of the consent decree, as we have previously not-

ed, the agreement must not be construed to establish or change the standard of culpability for civil liability. That standard is established by the traditional tort concept of duty to exercise ordinary care. Evidence of the breach of that standard may include the failure to operate by practices separately adopted by the Corrections Department unless the court finds, as a threshold issue, that the practice would not have been adopted but for the agreement. Regardless of the adoption of practices, the jury may consider acts and omissions relevant to treatment, health care and protection measured against the standard of ordinary care or the testimony of experts relevant to that standard. Pursuant to the federal order adopting the consent decree, we hold only that no evidence may be adduced through the agreement itself.

We affirm the court of appeals in part, on its affirmance of the ruling of the court below that plaintiffs were not entitled to partial summary judgment of liability. We reverse the court of appeals in part, on its affirmance of the trial court's dismissal of a direct action under the Tort Claims Act against the state, the Corrections Department, and the Secretary of Corrections, and we remand this case to the district court for further proceedings consistent with this opinion.

IT IS SO ORDERED.

SOSA, Senior Justice, and WALTERS, J., concur.

SCARBOROUGH, C.J., and STOWERS, J., dissent.

SCARBOROUGH, Chief Justice, dissenting.

I dissent.

The trial court properly refused to enter partial summary judgment in favor of plaintiffs because the issue of fact resolved in the prior action is not the same issue of fact that is involved in this case, because no final judgment was entered in the prior action, and because the Duran Decree and actions thereunder cannot establish the standard of culpability for civil liability. Furthermore, the trial court properly dis-

missed plaintiffs' Tort Claims Act claims against the State of New Mexico (State), the Corrections and Criminal Rehabilitation Department (CCRD) and Secretary of Corrections Michael Francke (Francke) because sovereign immunity precludes plaintiffs' claims against these defendants. I would therefore affirm the trial court and the Court of Appeals.

The doctrine of collateral estoppel can only be invoked where an identical issue of fact is involved in prior and subsequent actions. *International Paper Co. v. Farrar*, 102 N.M. 739, 741, 700 P.2d 642, 644 (1985); *see also Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979) (one purpose of collateral estoppel is to protect litigants from burden of relitigating identical issues). In this case, the federal action only decided that the terms of the Duran Decree were violated, it did not decide that defendants were liable for Silva's alleged wrongful death. The federal action therefore cannot preclude defendants from litigating, for the first time, their alleged liability for Silva's death.

Moreover, the doctrine of collateral estoppel can only be invoked where a final judgment has been entered. *C & H Constr. & Paving Co. v. Citizens Bank*, 93 N.M. 150, 597 P.2d 1190 (Ct.App.1979). No final judgment has been entered in the federal action. The federal court merely found that the terms of the Duran Decree had been violated and ordered Francke to identify the persons who violated the decree and show cause why they should not be held in contempt.

In any event, the order which adopted the Duran Decree, dated July 14, 1980, specifically states that "[t]he agreement and the policies attached thereto and the partial consent decrees on file herein are not to be construed to establish or change the standard of culpability for civil or criminal liability * * * * " One unambiguous thrust of the July 14, 1980 order is to preclude the specific abuse of *Duran* sanctioned today by the majority.

The State is not a proper party defendant under the Tort Claims Act. *Wittkowski v.* *State,* 103 N.M. 526, 710 P.2d 93 (Ct.App.), *cert. quashed,* 103 N.M. 446, 708 P.2d 1047 (1985). The trial court therefore did not err in dismissing plaintiffs' Tort Claims Act claim against the State. I note that there is no legislative, Court of Appeals or Supreme Court authority to support the position taken by the majority concerning the circumstances under which the State may be sued under the Tort Claims Act.

NMSA 1978, Section 41–4–4(A) (Repl. Pamp.1986) provides: "A governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by Sections 41–4–5 through 41–4–12 NMSA 1978." Sections 41–4–5 through 41–4–12 only waive liability for the torts of public employees and law enforcement officers. Since the CCRD is neither a public employee nor a law enforcement officer, the trial court properly dismissed plaintiffs' Tort Claims Act claim against the CCRD.

NMSA 1978, Section 41–4–2(B) (Repl. Pamp.1986) provides that "[l]iability for acts or omissions under the Tort Claims Act shall be based upon the traditional tort concepts of duty * * * * " As Judge Minzner pointed out in the Court of Appeals' opinion in this case, respondeat superior is not a traditional tort concept of duty; it is a tort concept of vicarious liability. The majority therefore errs in employing the doctrine of respondeat superior in a Tort Claims Act context.

Finally, the statutory waivers of immunity contained in Sections 41–4–6 (relating to public employee negligence in the operation or maintenance of any building, public park, machinery, equipment or furnishings), 41–4–9 (relating to public employee negligence in the operation of any hospital, infirmary, mental institution, clinic, dispensary, medical care home or like facilities), and 41–4–10 (relating to public employee negligence in the provision of health care services) cannot be reasonably interpreted to encompass the actions of Francke acting within the scope of his duties as Secretary of Corrections. The trial court therefore properly dismissed plaintiffs' Tort Claims Act claim against Francke.

In sum, the majority opinion, insofar as it concerns the doctrine of collateral estoppel, is entirely superfluous; and insofar as it relates to the concept of sovereign immunity under the Tort Claims Act, it completely ignores the clear intent of the legislature. I therefore dissent.

STOWERS, Justice, dissenting.

I dissent.

The majority has misconstrued both the application of the Duran Consent Decree and the application of the Tort Claims Act.

It is important to lay to rest once and for all that the Duran Consent Decree by its terms can have no application to any cause external to the Duran case.

It is equally clear that the issues involving the Tort Claims Act were properly construed and applied by the court of appeals in its opinion which I adopt, and I direct that said opinion of the court of appeals be printed in its entirety as part of my dissent.

No. 9267

Court of Appeals of New Mexico.

Dec. 4, 1986.

**OPINION**

MINZNER, Judge.

In response to separate motions by the parties, the memorandum opinion issued on October 9, 1986 is withdrawn, and the following formal opinion is substituted. *See* NMSA 1978, SC Misc.R. 7 (Repl.1984).

Plaintiffs appeal the dismissal of all claims filed by them as administrators of the estate of Manuel Silva against the State of New Mexico (State) and the Corrections and Criminal Rehabilitation Department of the State of New Mexico (CCRD), as well as claims filed by them against Secretary of Corrections Michael Francke (Francke) under the New Mexico Tort Claims Act, NMSA 1978, Sections 41–4–1 through –29 (Repl.1986) (Act). All claims arose out of the death of Manuel Silva, who committed suicide by hanging while incarcerated at the Central Correctional Facility in Los Lunas. Plaintiffs also appeal the denial of their motion for partial summary judgment against these defend-

ants and others. Although both parties requested oral argument, in the judgment of the panel, argument was not necessary. The motion is denied. We affirm.

**BACKGROUND.**

Plaintiffs' appellate claims arise out of a suit filed against the state, CCRD, Francke, the Reception and Diagnostic Center Classification Committee, and several individuals employed by the Department of Corrections (defendants). The complaint included three counts under the Act and one count under 42 U.S.C. Section 1983 (Supp.III 1979).

Plaintiffs moved for partial summary judgment as to liability, contending as a result of *Duran v. Anaya,* U.S. District Court Case No. CIV–77–721–JB (*Duran*), that defendants were precluded from disputing the issue of liability. The trial court denied the motion and granted defendants' motion to strike all exhibits relating to *Duran* that had been attached to plaintiffs' motion. Subsequently, Francke, CCRD, and State moved to dismiss all claims under the Act. The trial court granted this motion and entered final judgment as to Francke under NMSA 1978, Civ.P. Rule 54(b)(1) (Repl.1980) and as to CCRD and State under Civ.P. Rule 54(b)(2).

This court granted plaintiffs' application for interlocutory appeal and, on plaintiffs' motion, consolidated the interlocutory appeal with the appeal from the final judgments that had been entered. We address first plaintiffs' appeal from the final judgments.

**THE APPEAL OF RIGHT: WHETHER THE TRIAL COURT ERRED IN DISMISSING PLAINTIFFS' CLAIMS UNDER THE TORT CLAIMS ACT.**

After the supreme court abolished common law sovereign immunity, the legislature provided a statutory version in the Act. *See Begay v. State,* 104 N.M. 483, 723 P.2d 252 (Ct.App.1985), *rev'd on other grounds, Smialek v. Begay,* 104 N.M. 375, 721 P.2d 1306 (1986). Consequently, a cause of action against a governmental entity or public employee must lie within one of the express exceptions to the statutory

form of immunity contained in the Act. *Id.* We discuss separately plaintiffs' claims against the State, CCRD, and Francke.

## A. Claims Against the State.

Under the Act, the particular agency that caused the alleged harm is the party that may be held liable and against whom a judgment may be entered. *See Begay; Wittkowski v. State,* 103 N.M. 526, 710 P.2d 93 (Ct.App.1985). In this case, plaintiffs allege negligence as to CCRD. The district court properly dismissed the claims against the State. *Id.*

A prior opinion of the court of appeals, authored by Judge Wood, sets out in greater detail our rationale. That decision was overruled on other grounds. *See generally Clothier v. Lopez,* 103 N.M. 593, 711 P.2d 870 (1985) (overruling *Lopez v. State,* 24 SBB 193 (Ct.App.1985) as to the proper venue for claims under the Act). We take this opportunity to paraphrase a portion of Judge Woods' reasoning in *Lopez v. State* as our rationale for this issue. That reasoning is as follows:

Section 41-4-17, concerning the Act as an exclusive remedy, is written in terms of the governmental entity "whose act or omission gave rise to the suit or claim." Section 41-4-19 refers in Paragraph A to an action against a governmental entity and in Paragraph B to a judgment against a governmental entity. Section 41-4-23, concerning the public liability fund, refers in Paragraph B to liability insurance for state agencies, the defense of "any" state agency, and the payment of judgments against governmental entities.

The statutory provisions cited in the preceding paragraph indicate that the negligent agency is the entity that may be held liable. *New Mexico State Highway Commission v. Ferguson,* 98 N.M. 680, 652 P.2d 230 (1982), reached a similar result in considering a notice question. *Ferguson* held: "the statute means the particular agency that caused the alleged harm must have actual notice before written notice is not required." 98 N.M. at 681, 652 P.2d 230. We hold that the Act means that the particular agency that caused the alleged

harm is the party that may be held liable and against whom a judgment may be entered.

## B. Claims Against CCRD.

Plaintiffs make two contentions as to CCRD. The first relies on Section 41-4-2(B), which states that "[l]iability for acts or omissions under the Tort Claims Act shall be based upon the traditional tort concepts of duty and the reasonably prudent person's standard of care in the performance of that duty." Plaintiffs contend that the principle of respondeat superior is a traditional tort concept of duty.

The phrase "traditional tort concepts of duty and the reasonably prudent person's standard of care," however, refers to theories of negligence. Respondeat superior is a doctrine that imposes vicarious liability. Under the doctrine, one is held liable for the negligence of another, because of a special relationship. It applies when there has been an act or omission, by the other person, that breaches a tort concept of duty. Plaintiffs may not, by relying on the doctrine, avoid the need to identify a right to sue the entity against whom liability is asserted.

Under the Act, plaintiffs must identify an act or omission that is negligent and one that is expressly stripped of immunity. Plaintiffs' second argument acknowledges this obligation.

Plaintiffs contend that CCRD is liable under Sections 41-4-6, -9, and -10. Each of these sections waives immunity for negligence of "public employees." A "public employee" is defined as an officer, employee, or servant of a governmental entity. § 41-4-3(E). The corrections department is a governmental entity under the Tort Claims Act, not an employee of a governmental entity. *See Wittkowski.* Therefore, CCRD does not fall within any of these sections, and the trial court properly dismissed the claims against CCRD.

## C. Claims Against Francke.

Section 41-4-6 waives immunity for negligence of "public employees while acting

within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings." Section 41-4-9 waives immunity for negligence of public employees "in the operation of any hospital, infirmary * * * *." Under Section 41-4-10 immunity is waived for "public employees licensed by the state or permitted by law to provide health care services."

Francke is clearly a "public employee," but that is not sufficient to establish on the part of plaintiff of a right to sue. The language on which plaintiffs rely must cover his acts or omissions.

Plaintiffs argue Francke falls within Section 41-4-6 as an employee negligent in the operation or maintenance of a building or machinery. Plaintiffs contend that decedent's clothing was "machinery" within the terms of the Act because he hanged himself with his shirt; in not removing the clothing from decedent's possession, correctional facility employees failed to properly maintain machinery. Plaintiffs suggest as well that the design of the building enabled decedent to hang himself, and such a defect in design is encompassed by the relevant phrase.

Plaintiffs also claim in effect that there was not an adequate health-care system in place. Consequently, they ask us to hold that Francke is liable under Section 41-4-9, for operation of a facility comparable to a hospital, and under Section 41-4-10, as one of the "public employees licensed by the state or permitted by law to provide health care services."

Statutory words are to be used in their ordinary and usual sense unless the contrary is apparent, *see Methola v. County of Eddy*, 95 N.M. 329, 622 P.2d 234 (1980), and, as a statute in derogation of the common law, the Act is to be strictly construed. *See State ex rel. Miera v. Chavez*, 70 N.M. 289, 373 P.2d 533 (1962). We hold that plaintiffs' claims under Section 41-4-6, -9, and -10 do not lie within the plain meaning of those exceptions. *See generally Anchondo v. Corrections Dept.*, 100 N.M. 108, 666 P.2d 1255 (1983) (duties of secre-

tary of corrections are primarily administrative). *See also Begay; Wittkowski.*

Finally, plaintiffs argue that Francke acted unconstitutionally and therefore outside the scope of his duties, and that having done so, he subjected himself to personal liability and may be sued under the Act. This contention must be rejected. A cause of action under the Act must fit into one of the exceptions listed in the Act; all the exceptions are for employees acting within the scope of their duties. It follows that any claim against an individual not acting within the scope of his duties is not a claim under the Act.

Plaintiffs contend generally that Francke might be liable for negligent supervision or other negligence in failing to ensure compliance with the 1980 *Duran* consent decree. For the reasons stated above, we are not persuaded that any of the statutory provisions on which plaintiffs rely support the claim. Thus, the trial court did not err in dismissing plaintiffs' claims against Francke under the Act. *See C & H Construction & Paving, Inc. v. Foundation Reserve Insurance Co.*, 85 N.M. 374, 512 P.2d 947 (1973).

## THE INTERLOCUTORY APPEAL.

As to claims under the Act against the individual employees and the claim under 42 U.S.C. Section 1983 against those employees and Francke, all of which are still pending in the district court, plaintiffs argue that they should have been granted partial summary judgment on liability as a result of the special master's findings and Judge Burciaga's order in *Duran*. We are not able to agree.

Plaintiffs' argument on appeal relies on events subsequent to the order approving a partial consent decree. They are as follows: in May 1984, Judge Juan Burciaga ordered a hearing by a special master to inquire into Silva's death in order to enable the court to determine whether noncompliance with the consent decree had contributed to the circumstances resulting in the death. After an evidentiary hearing, the special master filed a report which was confirmed by order of the court on August 15, 1984. In confirming the report, Judge

Burciaga found that provisions of the consent decree had been violated, and ordered Francke to identify the persons who violated the decree and show cause why they should not be held in contempt. Subsequently plaintiffs moved to intervene; their motion was denied.

The rules of res judicata are applicable when a final judgment has been entered. *See Berlint v. Bonn*, 102 N.M. 394, 696 P.2d 482 (Ct.App.1985); *C & H Construction & Paving Co. v. Citizens Bank*, 93 N.M. 150, 597 P.2d 1190 (Ct.App.1979). In addition, the second suit must be identical with the prior suit, in several respects, particularly, there must be identity of subject matter, cause of action, and parties. *Torres v. Village of Capitan*, 92 N.M. 64, 582 P.2d 1277 (1978). A judgment or order is not final unless all issues of law and fact necessary to be determined have been determined, and the case has been completely disposed of to the extent the court has power to dispose of it. *Clancy v. Gooding*, 98 N.M. 252, 647 P.2d 885 (Ct.App.1982). Where no further judicial action on the part of the court is essential, then the decree entered by the court is a final one. *In re Estate of Foster*, 102 N.M. 707, 699 P.2d 638 (Ct.App.1985).

Collateral estoppel also applies only where there has been a final judgment. *C & H Construction & Paving Co. v. Citizens Bank*. It involves issue preclusion, rather than a bar to the second proceeding, *see Torres;* the issue precluded from relitigation must have been actually litigated and necessarily determined in the prior case between parties or their privies. *International Paper Co. v. Farrar*, 102 N.M. 739, 700 P.2d 642 (1985). An issue is actually litigated when it is properly raised, by the proceedings or otherwise, and is submitted for determination and is determined. *Paulos v. Janetakos*, 46 N.M. 390, 129 P.2d 636 (1942).

The special master was instructed "to enable the Court to consider" whether violations of the consent decree "contributed in a material way to the circumstances resulting in" Silva's death. The order entered by Judge Burciaga directed Francke to make further fact finding and gave him an opportunity to argue that contempt had not occurred.

We conclude that the order was not final for purposes of either res judicata or collateral estoppel. We also conclude that plaintiffs have not shown that the subject matter of the contempt hearing was the same as that of the present lawsuit or identified issues in the present suit that were actually litigated and determined in the prior one. There was no finding on proximate cause, and the employees who violated the standards were not identified. Thus, we do not reach the more difficult issues briefed by the parties.

We hold that plaintiffs did not make the requisite prima facie showing. *See International Paper Co. v. Farrar; Edwards v. First Federal Savings & Loan Assoc. of Clovis*, 102 N.M. 396, 696 P.2d 484 (Ct.App. 1985). The trial court acted properly in denying plaintiffs' motion for partial summary judgment.

In support of their motion for partial summary judgment, plaintiffs submitted portions of the transcript of the hearing before the special master, as well as various records. The trial court granted defendants' motion to strike. In view of our disposition as to the motion for summary judgment, any issue as to the motion to strike is moot. On remand, plaintiffs should not be precluded from offering at trial any relevant exhibits and testimony otherwise admissible to support their theory of liability.

Plaintiffs had the burden, in moving for summary judgment, to show the finality of the order upon which they relied. *See Ballard v. Markey*, 66 N.M. 265, 346 P.2d 1045 (1959). Until a prima facie showing was made, appellees had no obligation to dispute finality. *See Security Bank & Trust v. Parmer*, 97 N.M. 108, 637 P.2d 539 (1981). Because finality was part of plaintiffs' burden in moving for summary judgment, and because we conclude that burden was not sustained, the trial court's decision to deny partial summary judgment should be affirmed.

## CONCLUSION.

We conclude that the district court was correct in denying the motion for partial summary judgment, as well as in granting the motion to dismiss. The trial court is affirmed, and the cause remanded for trial on the merits.

IT IS SO ORDERED.

HENDLEY, C.J., and DONNELLY, J., concur.