2 F.3d 1160
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Carlotta MITCHELL, Plaintiff-Appellant,
v.
ALBUQUERQUE BOARD OF EDUCATION, doing business as
Albuquerque Public Schools, Lillian Barna, Joe
Groom, and John Mondragon, Defendants-Appellees.
 No. 91-2294.
 United States Court of Appeals, Tenth Circuit.
 Aug. 13, 1993.
 
 Before McKAY, Chief Judge, SETH and MOORE, Circuit Judges.
 ORDER AND JUDGMENT*
 SETH, Circuit Judge.
 
 
 1
 Plaintiff Carlotta Mitchell challenges the granting of summary judgment by the United States District Court for the District of New Mexico wherein the court determined that Plaintiff was collaterally estopped from litigating her Title VII and 42 U.S.C. Secs. 1983 and 1985 claims against Defendants Albuquerque Board of Education, doing business as Albuquerque Public Schools, Joe Groom, John Mondragon, and Lillian Barna. Based upon the unique facts of this case, we affirm in part and reverse in part.
 
 
 2
 Plaintiff, who is African-American, was a teacher at an Albuquerque public school. It is uncontested that during her tenure at the school she was outwardly opposed to the school's "mainstreaming" policy of integrating special students into regular classrooms. In addition, complaints were filed by several parents concerning Plaintiff's allegedly abusive behavior towards students and themselves. Although Plaintiff claimed that these complaints were fallacious and racially motivated, Defendant Joe Groom, her principal, instructed her to submit a written improvement plan addressing her opposition to "mainstreaming" and the complaints lodged by the parents. After receiving several unsatisfactory reports from Plaintiff over a six-month period, Mr. Groom suspended Plaintiff for insubordination. This suspension was followed by a discharge letter sent by Defendant Lillian Barna, Superintendent of the Albuquerque Public Schools.
 
 
 3
 Thereafter, Plaintiff was provided an adversarial hearing before the Albuquerque Public Schools Board of Education ("local board") pursuant to the then-applicable statute, N.M.Stat.Ann. Secs. 22-10-17 and 22-10-19 (Repl.1984). Plaintiff was represented by counsel throughout the hearing which lasted eight sessions totalling approximately forty hours. During the hearing twenty-four witnesses were examined, of which eleven were called by Plaintiff, and over sixty exhibits were offered. The local board voted unanimously to uphold Plaintiff's termination, finding that her "repeated refusals to comply with the lawful order of her principal constituted insubordination which was good and just cause for her termination." Record on Appeal, Vol. II, Doc. 17, Appendix "E", at 7.
 
 
 4
 Plaintiff appealed the decision to the New Mexico State Board of Education ("SBE") pursuant to N.M.Stat.Ann. Sec. 22-10-20 (Repl.1984). By stipulation the appeal was conducted by an independent hearing officer upon a full review of the transcript of the local board hearing, briefs submitted by both parties and oral argument before the SBE. The hearing officer entered recommended findings of fact and conclusions of law upholding the local board's decision. After a hearing that Plaintiff did not attend despite receiving notice, the SBE adopted the hearing officer's recommendations.
 
 
 5
 The SBE decision was then appealed to the New Mexico Court of Appeals which in turn upheld Plaintiff's termination. Specifically, the court found that Plaintiff failed to prove that the SBE decision was not in accordance with the law or that there was any other reversible error.
 
 
 6
 During this appeals process, Plaintiff filed two separate civil suits. First, after obtaining a right to sue letter from the E.E.O.C., she filed a complaint in the United States District Court for the District of New Mexico primarily claiming that Mr. Groom and Superintendent Barna violated Title VII, 42 U.S.C. Sec. 2000(e). The gist of her complaint was that Mr. Groom's request that she submit an improvement plan was an improper disciplinary action that was in fact a pretext for discrimination because both he and some students' parents wanted to oust her from the school due to her race. Plaintiff also made a vague assertion that Superintendent Barna illegally retaliated against her for instituting the appeal before the SBE by officially upholding her termination. Just prior to the decision by the state court of appeals affirming the SBE decision, Plaintiff sued in state district court claiming that the above described conduct by Mr. Groom and the local board, including Superintendent Barna, violated her civil rights protected by 42 U.S.C. Secs. 1983 and 1985. In particular she claimed that her equal protection right to be free from racial discrimination and her First Amendment right to free speech concerning mainstreaming were illegally abridged by Defendants. These two cases were later consolidated in federal district court.
 
 
 7
 Subsequently, Defendants filed a motion for summary judgment claiming that Plaintiff's Title VII and civil rights claims were barred by the doctrines of administrative res judicata and collateral estoppel. Defendants argued that the findings by the local board and SBE that Plaintiff was fired for good and just cause, and the affirmance of those findings by the state court of appeals, necessarily foreclose Plaintiff's contentions that her termination was racially motivated and violated her right to free speech.
 
 
 8
 Although admitting that "she was terminated for insubordination," Plaintiff argued in her response to Defendants' motion that she was denied a full and fair opportunity to litigate her discrimination and First Amendment claims because the local board was biased and she lacked subpoena power to compel the attendance of several unnamed witnesses. Record on Appeal, Vol. I, Doc. 65. In addition, she argued that neither res judicata nor collateral estoppel were applicable because a finding that there was just cause for her firing does not necessarily mean that her race was not a contributing factor to her termination nor that her discrimination claims were actually litigated at the state level. Id.
 
 
 9
 In a decision delivered from the bench, the district court granted
 
 
 10
 "the motion for summary judgment on the basis of the doctrine of issue of preclusion [collateral estoppel] applies to administrative agency's findings of fact regarding the claims. And also further that even though there are some affidavits attached before the Court, the Court does not find that plaintiff's response to the defendant's motion for summary judgment raises any genuine issues of material fact."
 
 
 11
 Record on Appeal, Supp.Vol. II, at 28. However, it appears that the district court also intended to base its decision on the doctrine of res judicata. This has led to some confusion among the parties as to what doctrine the court actually applied.
 
 
 12
 In order to focus our review of this matter, we note that res judicata is inapplicable to this case because the causes of action sued upon are different, i.e., Plaintiff's administrative appeals of her termination are not identical to her Title VII and civil rights lawsuits even though the underlying facts are similar. See Silva v. State of New Mexico, 745 P.2d 380, 382 (N.M.) ("When the duty sued upon stems from different roots in the prior and subsequent actions, even if both actions involve essentially the same course of wrongful conduct, it is indicated that the suits arise from different causes of action."); Tolefree v. Kansas City, Mo., 964 F.2d 803 (8th Cir.) (administrative challenge to dismissal is not identical to discrimination claims for purposes of res judicata).
 
 
 13
 The sole issue before this court is whether the district court properly granted summary judgment based on its determination that collateral estoppel operates to bar Plaintiff's Title VII and civil rights claims. We review the order of summary judgment de novo in the light most favorable to the nonmoving party. Thournir v. Meyer, 909 F.2d 408 (10th Cir.).
 
 
 14
 28 U.S.C. Sec. 1738 requires federal courts to give a state court judgment the same preclusive effect as the state rendering the judgment would have given. Kremer v. Chemical Constr. Co., 456 U.S. 461, 466; Scroggins v. State of Kansas, 802 F.2d 1289, 1291 (10th Cir.). In looking to New Mexico law, we find that a moving party must demonstrate that:
 
 
 15
 "(1) the party to be estopped was a party to the prior proceeding, (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation. If the movant introduces sufficient evidence to meet all elements of this test, the trial court must then determine whether the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the prior litigation."
 
 
 16
 Shovelin v. Central New Mexico Electric Cooperative, 850 P.2d 996, 1000 (N.M.) (citations omitted).
 
 
 17
 On appeal Plaintiff challenges the district court's application of collateral estoppel to bar her various claims. There is no dispute that the first part of the collateral estoppel test is satisfied, and we have already determined that the pertinent causes of action are different. Thus we are only concerned with Plaintiff's arguments that her discrimination and civil rights claims have not been actually litigated and necessarily decided and that genuine issues of material fact remain concerning whether she was denied a full and fair opportunity to litigate at the state level.
 
 
 18
 We first address the collateral estoppel dispute in relation to Plaintiff's Title VII and related Secs. 1983 and 1985 claims as they are factually indistinguishable. As we understand Plaintiff's complaints, the determinative issue underlying her various discrimination claims is that Mr. Groom's request for a written improvement plan was a pretext for racial discrimination. This is the issue that Defendants seek to collaterally estop from further litigation.
 
 
 19
 As noted above, the articulated reason for Plaintiff's termination was insubordination. According to the State Board of Education Regulation 77-1, insubordination requires a finding that Plaintiff willfully disregarded a lawful order of an administrative authority, e.g., a principal. Before the local board, Plaintiff proffered two theories to support her contention that Mr. Groom's request was unlawful and therefore she was not insubordinate for any failure to respond thereto. First, she claimed that the request did not conform with her employment contract and the various regulations governing teacher discipline. However, she also argued at that time, as admitted in her response to Defendant's motion for summary judgment, that Mr. Groom's request was a pretext for racial discrimination. Consequently, the issue of whether Mr. Groom's request to Plaintiff was racially discriminatory was relevant to both Plaintiff's administrative hearings and her subsequent lawsuits, and was in fact raised in both actions.
 
 
 20
 We now turn to the third part of the collateral estoppel test to determine if the issue of Mr. Groom's discriminatory conduct was actually litigated. Plaintiff argues for the first time on appeal that even if this issue were raised the local board ignored or otherwise failed to adequately address her discrimination claims. We are not willing to diverge from the general rule that we will not entertain issues that were not considered and ruled upon by the district court. Farmers Ins. Co. v. Hubbard, 869 F.2d 565 (10th Cir.).
 
 
 21
 In the alternative, Plaintiff asserts that the record presented to the district court was inadequate to support a determination that her discrimination claims were actually litigated. See Silva, 745 P.2d at 384 (collateral estoppel is not "to be applied where the record is insufficient to determine what issues were actually and necessarily determined by prior litigation...."). However, in her response to Defendants' motion for summary judgment, Plaintiff admitted the following salient facts as enumerated in the Defendants' motion:
 
 
 22
 "7. In the course of the [local board] hearing, Mitchell contended that the stated reason for her discharge (insubordination) was pretextual and that instead she was really terminated because of racial bias against her.
 
 
 23
 "9. After hearing all the testimony and considering the evidence, the local board rejected Mitchell's contentions and unanimously voted to terminate her on the grounds of insubordination."
 
 
 24
 Record on Appeal, Vol. I, Doc. 65, at 1, and Vol. II, Doc. 17, at 2-3. She also stated that her "contention throughout the lower administrative and state court proceeding [was] that her termination was not only pretextural [sic] but was in violation of the applicable regulations and her contract." Record on Appeal, Vol. I, Doc. 65, at 4. These admissions alone demonstrate that there was actual litigation of the principal issue underlying Plaintiff's race discrimination claims. In passing we note that our conclusion that the determinative issue was actually litigated is supported by the local board's decision wherein it weighed all of the evidence and concluded that the reports filed against Plaintiff, which she claimed were racially motivated and untrue, warranted Mr. Groom's request to Plaintiff, i.e., the reports were valid and not racially motivated.
 
 
 25
 With respect to the fourth part of the collateral estoppel test, Plaintiff argues by inference that the local board's finding of good and just cause for her termination, i.e., that she was insubordinate, does not necessarily preclude a finding that she was also fired because she is African-American. She maintains that if the local board had found no discrimination, it would have explicitly stated such a resolution in its decision. Unfortunately for Plaintiff, she did in fact argue race discrimination before the local board which was authorized by statute to admit testimony and evidence "on all pertinent issues." N.M.Stat.Ann. Sec. 22-10-19(A) (Repl.1984). By raising the defense that Mr. Groom's request was unlawful because it was a pretext for race discrimination, Plaintiff focused the local board's review to an essential determination of that issue. See Paulos v. Janetakos, 129 P.2d 636 (N.M.). Therefore, the local board's decision that Mr. Groom's request was lawful and that Plaintiff was insubordinate necessarily rejected Plaintiff's claims that the request was discriminatory.
 
 
 26
 Although we have determined that the key race discrimination issue has been actually litigated and necessarily decided by the local board acting in its quasi-judicial capacity, we recognize for purposes of Title VII, unlike Sec. 1983, that collateral estoppel may be applied under 28 U.S.C. Sec. 1738 only if there has been a prior state court decision. Kremer, 456 U.S. 461. See also Univ. of Tennessee v. Elliott, 478 U.S. 788 (when an agency acts in a quasi-judicial capacity, its decision is entitled to the same full faith and credit as court decision); Crot v. Byrne, 957 F.2d 394 (7th Cir.) (agency decision collaterally estopped subsequent Sec. 1983 action). In this case Plaintiff appealed to the SBE which affirmed the local board decision. Subsequently, Plaintiff appealed to the state court of appeals. In that appeal, Plaintiff cited a proposed conclusion of law by the hearing officer that the SBE lacked authorization to address certain matters to support her proposition that the SBE failed to conduct a proper de novo review. In its unpublished decision, the state court of appeals held that the record did not support Plaintiff's proposition.
 
 
 27
 The court of appeals noted that Plaintiff had filed several grievances with the Albuquerque Teachers Federation claiming, among other things, that Mr. Groom lacked authority to request the improvement plan and was discriminating against her because of race. The court also found that the hearing officer had conducted a review of the local board hearings, which as we have discussed included Plaintiff's claims of pretext and discrimination, and that the officer proposed a finding of fact in which he stated that none of the aforementioned grievances resulted in any relief for Plaintiff. Ultimately, the court concluded:
 
 
 28
 "[T]he hearing officer reasoned that Mitchell's behavior was insubordinate if the principal's order was lawful and that the agreement between the teachers union and the school district did not affect the lawfulness of that order. Thus, we understand the [hearing officer's] finding and the conclusion as a rejection of Mitchell's claim that the order was unlawful. For this reason, we are not persuaded that the hearing officer failed to consider Mitchell's contention on its merits.
 
 
 29
 ....
 
 
 30
 "... [Mitchell] has not demonstrated that the State Board's decision was not in accordance with law and has not established other reversible error."
 
 
 31
 The state court of appeals' affirmation of the agency's prior decisions actually and necessarily decided the key issue of whether Mr. Groom's request was lawful and therefore not racially motivated, and consequently it is entitled to full faith and credit in federal court pursuant to the doctrine of collateral estoppel if Plaintiff was accorded a full and fair opportunity to litigate at the state level. See Kremer, 456 U.S. 461.
 
 
 32
 In her response to Defendants' motion for summary judgment, Plaintiff argued that genuine issues of material fact remained relative to her opportunity to fully and fairly litigate her discrimination claims. In particular she argued that the reviewing agencies were biased and that she was unable to subpoena witnesses during her local board hearing. In addition, she claims that the district court ignored countervailing equities as defined in Silva, 745 P.2d 380. After carefully examining the record, we can find no evidence supporting these claims. Rather, Plaintiff has made conclusory self-serving statements which are insufficient to create a genuine dispute over material facts. Medina v. City & County of Denver, 960 F.2d 1493 (10th Cir.). Even if there were countervailing equities, we find that they would be clearly outweighed by substantial procedural and substantive due process provided to Plaintiff. See Kremer, 456 U.S. at 479-85. In particular, we note the thoroughness of the hearings and subsequent appeals throughout which Plaintiff was represented by counsel.
 
 
 33
 Unlike Plaintiff's discrimination claims, we find that the disposition of her First Amendment claim is akin to our decision in Scroggins, 802 F.2d 1289 (holding that dismissed employee did not have full and fair opportunity to litigate discrimination claims during administrative appeals of his termination). For purposes of clarity we observe that Plaintiff's complaint filed in state court incorrectly cited 42 U.S.C. Sec. 1983, rather than Sec. 1986, as applying to her First Amendment claim that she was retaliated against for opposing mainstreaming at her school, but we will treat her claim as properly pled. It cannot be disputed based on the record before us that absolutely no mention of Plaintiff's First Amendment claim was made any time during the administrative appeal of her termination. This is even more severe than Scroggins where there was at least the assertion that race discrimination issues were discussed in excruciating detail. Scroggins, 802 F.2d at 1291. It simply cannot be said that Plaintiff's First Amendment claim was actually litigated or necessarily decided when the record is absolutely devoid of any mention thereto.
 
 
 34
 Accordingly, we AFFIRM the granting of summary judgment by the United States District Court for the District of New Mexico dismissing Plaintiff's Title VII and 42 U.S.C. Secs. 1983 and 1985 claims, and we REVERSE the dismissal of her 42 U.S.C. Sec. 1986 First Amendment claim and REMAND for further proceedings consistent with this opinion. IT IS SO ORDERED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3