740 P.2d 705

C & D PLUMBING, INC., a New Mexico corporation, and Texas Street Lumber Company, a New Mexico corporation, Plaintiffs-Appellants,

v.

R.G. ARMSTRONG, Leona C. Armstrong, his wife, et al., Defendants.

Robert G. ARMSTRONG and Leona C. Armstrong, his wife, Third party Plaintiffs-Appellees,

v.

C & D PLUMBING, INC., et al., Third Party Defendants.

No. 16822.

Supreme Court of New Mexico.

Aug. 7, 1987.

W.T. Martin, Jr., Carlsbad, for appellants C & D Plumbing.

Rosenberg, Murphy & Meyer, Robert N. Meyer, Carlsbad, for appellant Texas Street Lumber.

Dow & Williams, Lesley Williams, Carlsbad, for appellees.

## OPINION

SOSA, Senior Justice.

Third-party plaintiffs-appellees Robert G. Armstrong and Leona C. Armstrong (Owners) were granted summary judgment by the trial court in their defense of an action brought by third-party defendants-appellants C & D Plumbing, Inc., and Texas Street Lumber Company (Lien Claimants) to foreclose materialmen's liens against the Owners' property. The Lien Claimants appeal, and we reverse the trial court's judgment.

## FACTS

The undisputed facts are as follows. The Owners entered into a contract with Scott Bibby (Bibby), a general contractor, whereby Bibby agreed to build the Owners' home in Carlsbad. The contract price for the construction was $78,513.00, and the Owners agreed to pay Bibby in "partial draws * * * as work is completed." Beginning with a check dated April 26, 1985, the Owners paid Bibby $68,000 on the contract, the last payment reflected in a check for

$15,000 dated December 3, 1985, bearing the words, "To be applied to total price of [Owners' residence], balance $10,513.00."

The Lien Claimants provided building materials to the Owners through Bibby costing a total of $15,117.05. At some point in November 1985, the Owners asked one of the Lien Claimants for a lien release, but were informed by the Lien Claimant that it could not sign such a release until it had been paid what was owed to it for materials already provided to the project. After this conversation, the Lien Claimant continued to provide materials to the project. On January 10, 1986, Bibby abandoned the project, and on January 16, 1986 he executed an unverified "Receipt and Release," stating in pertinent parts: "[T]he contractor * * * does hereby acknowledge receipt from * * * owners * * * of the payment of all amounts due and owing for any construction, improvements, landscaping, or other work done under the terms of said construction contract * * * in the total sum of $68,000 and which sum is the total paid by the [Owners] for partial draws and that the work is completed for which the said [contractor] has received payment."

On January 31, 1986 Bibby filed a petition for voluntary bankruptcy under Chapter 7 of the United States Bankruptcy Code. One Lien Claimant had recorded its lien on January 22, 1986, and the other on January 30, 1986.

## APPLICABLE LAW

The controlling statute for this appeal is NMSA 1978, Section 48–2–10.1 (Cum.Supp. 1985), and the controlling case is *Aztec Wood Interiors, Inc. v. Andrade Homes, Inc.*, 104 N.M. 45, 716 P.2d 236 (1986). The parties argue for differing interpretations of the applicable law. The Owners argue that they are protected from claims of lien by virtue of the language in Section 48–2–10.1 which reads, "Payment by the owner * * * to any person entitled to * * * payment of all amounts due and owing for any construction * * * the performance of which could give rise to a lien pursuant to Section 48–2–2 * * * shall discharge all such liens unless prior to such payment any person who is entitled to such lien has filed

for record his lien pursuant to Section 48–2–6 * * *." The Owners contend that the words "all amounts due and owing" apply to the partial payments they made to the contractor, and point to the receipt and release as evidence of payment of "all amounts." The Lien Claimants, on the other hand, argue that the words "all amounts due and owing" mean full and final payment of the original contract price, and that since such payment has admittedly not been made, the Owners can find no relief in Section 48–2–10.1.

■ We agree with the Lien Claimants as to this issue. In *Aztec Wood Interiors, Inc. v. Andrade Homes, Inc.*, where we likewise construed Section 48–2–10.1, we held "Since Aztec filed its lien after the Alcones made the *final payment* on the property, Subsection (A) discharges the Alcones from the lien * * *." 104 N.M. at 46, 716 P.2d at 237. (Emphasis added.) We have thus construed the words "all amounts due and owing" in the statute to mean final payment, not partial payment as here. The Owners' reliance on their contractor's receipt and release, worded judiciously to conform with Subsection (A) of the statute, does not provide the remedy for which the Owners argue.

■ However, even if the receipt and release did entitle the Owners to prevail on their claim that partial payment equals "all amounts due and owing," there is a further obstacle which the Owners cannot surmount—namely, our interpretation of Section 48–2–10.1 so as to apply to *innocent* owners only. *Aztec Wood Interiors, Inc.*, 104 N.M. at 47, 716 P.2d at 238. By innocent we meant owners who had no notice, actual or constructive, of intervening claims by unpaid materialmen. Whereas the contractor in *Aztec Wood Interiors* gave his owners an affidavit stating that there were no outstanding liens on the property, here it is undisputed that the Owners knew of at least one outstanding claim before they made the last payment to the contractor. The Owners argue in their brief on appeal that "whether or not the Owners knew of a possible lien is of no consequence," citing *Aztec* as authority for

such proposition, but the Owners' reliance on that case is misplaced.

Accordingly, we reverse the judgment of the trial court, and remand the case to the trial court with instructions to enter judgment in favor of the Lien Claimants.

WALTERS and RANSOM, JJ., concur.