872 P.2d 847

**TABET LUMBER COMPANY, INC.,**
**a New Mexico corporation,**
**Plaintiff–Appellant,**

v.

**Gary R. ROMERO, JoAnn Romero, and**
**BancPlus Mortgage Corporation,**
**Defendants–Appellees.**

**No. 21246.**

Supreme Court of New Mexico.

March 21, 1994.

**430**

Thomas A. Tabet, for appellant.

Sheehan, Sheehan & Stelzner, P.A., Susan C. Little and Kim A. Griffith, Albuquerque, for appellees Gary & JoAnn Romero.

Robert E. Melton, P.A., Robert E. Melton, Albuquerque, for appellee BancPlus Mortg. Corp.

## OPINION

BACA, Justice.

Plaintiff–Appellant, Tabet Lumber Company, Inc. ("Tabet"), appealed when the district court granted a motion for summary judgment and awarded attorney's fees in favor of Defendant–Appellees, Gary and JoAnn Romero ("the Romeros"). This case arose out of a general contractor's failure to pay for materials provided by Tabet for the construction of the Romeros' home.[1] As a result of the general contractor's failure to pay, Tabet filed a lien on the Romeros' real property. Tabet subsequently filed a complaint for money due and for foreclosure against the Romeros. The Romeros filed a motion to dismiss or alternatively for summary judgment, which was eventually granted. The Romeros then filed a motion for attorney's fees which was granted. On appeal we address four issues: (1) Whether the district court's decision to change its ruling on the Romeros' motion to dismiss or alternatively for summary judgment was an abuse of discretion; (2) whether the district court erred in concluding that the Romeros were entitled to summary judgment as a matter of law; (3) whether the district court erred in concluding that the lien filed by Tabet was discharged pursuant to the Stop Notice Act, NMSA 1978, §§ 48–2A–1 to –12 (Cum.Supp. 1993); and (4) whether the district court erred in awarding attorney's fees to the Romeros. We review this case pursuant to SCRA 1986, 12–102(A)(1) (Repl.Pamp.1992), and affirm in part and reverse in part.

### I

The facts in this case are as follows. The Romeros entered into a Construction Pur-

---

**1.** The general contractor was discharged from all financial responsibility as the result of a bankruptcy petition filed in the United States Bankruptcy Court.

chase Agreement on June 8, 1991 with Charly and Theresa Sanchez doing business as CS Construction ("the general contractor"), which provided that the general contractor was to build a new home for the Romeros for a total purchase price of $109,000. Tabet provided building materials to the general contractor for use in the construction of that home. The contractor failed to pay the balance due to Tabet after demand, but Tabet failed to notify either the Romeros or the lender, BancPlus Mortgage Corporation ("BancPlus"), of that fact.

On January 10, 1992, the Romeros and the general contractor formally closed the construction purchase transaction. At the closing, the Romeros paid the full balance due and owing to the general contractor on the purchase price with funds borrowed from BancPlus. The general contractor executed lien affidavits affirming that it had received and accepted full and final payment from the Romeros, and that all materialmen, subcontractors, or other potential lien claimants had been paid or their claims otherwise satisfied. The sum of seven hundred twenty-four dollars and sixty cents ($724.60) of the purchase price proceeds paid by the Romeros was held in escrow by the title company to be distributed to the general contractor pending the completion of certain non-conforming punchlist items by January 31, 1991. The money in escrow was to be returned to the Romeros if the general contractor failed to complete the punchlist work.

On January 10, 1992, BancPlus filed a mortgage against the property. Tabet subsequently filed a lien on the property on January 16, 1992, and brought suit for money due and for foreclosure on August 3, 1992. The Romeros filed a motion to dismiss or alternatively for summary judgment, claiming that they had paid the general contractor in full on January 10, 1992, and that under Section 48–2A–11 of the Stop Notice Act, any responsibility they may have had regarding the debt owed to Tabet was discharged as a result of their making final payment on the home prior to Tabet filing its lien. The district court denied the motion. The Romeros then filed a motion to reconsider. BancPlus filed a motion for summary judgment,

claiming that because the debt was discharged as to the Romeros, its responsibility was also discharged, and that, because its lien was filed prior to Tabet's lien, the Bank's lien was superior to Tabet's lien. The district court, with a different judge sitting on the case granted the motion to reconsider, reversed the previous ruling on the Romeros' motion, and granted the Romeros' and BancPlus' motions to dismiss or alternatively for summary judgment. The Romeros subsequently filed a motion for award of attorney's fees and the district court granted the motion. Tabet appeals the granting of summary judgment for the Romeros and the granting of attorney's fees to the Romeros.

## II

The first issue we address is whether the district court's decision to change its ruling on the Romeros' motion to dismiss or, alternatively, for summary judgment was an abuse of discretion. Tabet contends that the district court abused its discretion by reversing the prior ruling denying the Romeros' motion. We disagree.

■■■ The district court "has the inherent authority to reconsider its interlocutory orders, and it is not the duty of the [district court] to perpetuate error when it realizes it has mistakenly ruled." *Melnick v. State Farm Mut. Auto. Ins. Co.*, 106 N.M. 726, 728, 749 P.2d 1105, 1107 (1988). The grant or denial of a motion for summary judgment is an interlocutory order, *see* SCRA 1986, 1–056(C), and, therefore, the district court could properly reconsider its previous ruling notwithstanding the fact that a different judge had issued that ruling.

## III

■■■ We next address whether the district court erred by granting the Romeros' motion for summary judgment. "Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Koenig v. Perez*, 104 N.M. 664, 665, 726 P.2d 341, 342 (1986). If the facts are undisputed and only a legal interpretation of the facts

remains, summary judgment may be properly granted. *Id.* at 666, 726 P.2d at 343.

Tabet contends that there are genuine issues of material fact and that summary judgment was improperly granted. We cannot agree. The facts are undisputed and relate that the Romeros and the general contractor met on January 10, 1992, for a final closing in which the balance on the home was paid in full, with $724.60 being placed into an escrow account to insure the completion of certain punchlist items by the general contractor. Tabet filed its claim of lien on January 16, 1992—six days after the final payment and after the Bank had filed its mortgage lien. Under NMSA 1978, Section 48–2A–11 (Cum. Supp.1993), if Tabet failed to file its lien prior to a final payment by the Romeros, any amounts due and owing for any labor or materials furnished by Tabet were discharged. Because the facts are undisputed, all that remained was for the district court to determine whether the Romeros' final payment of the whole balance due and owing on January 10, 1992, served as the "final payment" as defined by Section 48–2A–11. Hence, the district court properly concluded that only a question of law remained.

We next address whether the district court properly interpreted Section 48–2A–11, which provides:

> Payment by the owner ... to any person entitled to payment of all and any amounts due and owing for any labor or materials furnished or other actions the performance of which could give rise to a lien ... upon a residential site shall discharge all such liens unless prior to payment any person who is entitled to such lien has filed for record his lien....

■ Tabet makes two arguments in support of its claim that summary judgment was improperly granted in favor of the Romeros. Tabet first contends that because a small amount of money was held in escrow to insure the completion of certain punchlist items, final payment was not made by the Romeros on January 10, 1992. Tabet argues that because of this arrangement, final payment did not occur until January 31, 1992, thus it is entitled to all amounts due and owing.

It is undisputed that the money held in escrow would not become due and owing to the general contractor unless and until certain punchlist items that did not concern Tabet were corrected. Therefore, the payment made on January 10, 1992, was the final payment on the purchase contract and the debt to Tabet is discharged as to the Romeros.

Tabet contends that the facts of *C & D Plumbing, Inc. v. Armstrong*, 106 N.M. 155, 740 P.2d 705 (1987), are analogous to the case at bar. We disagree. In *C & D Plumbing*, the general contractor was to be paid in installments. The general contractor abandoned the project when there was still a balance of $10,513 outstanding on the purchase price. The general contractor then provided the owners with a document acknowledging receipt of "payment of all amounts due and owing for any construction, improvements, landscaping, or other work done under the terms of said construction contract." 106 N.M. at 156, 740 P.2d at 706. This Court held that the owners had not made final payment on the house despite the language of the receipt. *Id.* Tabet argues that *C & D Plumbing* is distinguished only in that, there, a receipt was used, and here, an escrow account was set up. A receipt claiming that all amounts due and owing have been paid and an escrow account opened to insure performance, however, do not accomplish the same end. The receipt used in *C & D Plumbing* served as evidence that the owners had paid all amounts due the contractor, even though more than $10,000 was still owed on the home. Here, the escrow account was set up after the total contract price was paid as a device to insure that the general contractor completed certain punchlist items that did not concern Tabet at all. It is also noteworthy that unlike the owners in *C & D Plumbing*, the Romeros did not make partial payments. The Romeros paid the full amount of the balance owed on January 10, 1992. The small amount held in escrow did not affect the parties' contemplation that the January 10 closing was to be a final closing with all amounts due and owing being paid.

Tabet also argues that the Romeros were not innocent owners as contemplated by the Stop Notice Act, particularly Section 48-2A-11. Tabet claims that the establishment of an escrow account to make payment for punchlist items "shows that . . . the Romeros were aware of debt owed, or potential lien claims." Section 48-2A-11 has been interpreted by this Court to apply only to innocent owners, meaning "owners who had no notice, actual or constructive, of intervening claims by unpaid materialmen." *C & D Plumbing,* 106 N.M. at 156, 740 P.2d at 706; *see also Pyburn v. Kirkpatrick,* 106 N.M. 247, 248, 741 P.2d 1368, 1369 (1987).

Tabet's contention that the opening of an escrow account in itself proves the Romeros were aware of a debt owed by the general contractor to Tabet is wholly without merit. Tabet made no effort to inform either the Romeros or the Bank that it had a claim. Tabet provided no evidence of a genuine issue of material fact that the Romeros had actual or constructive knowledge of Tabet's claim before final payment was made. Consequently, Section 48-2A-11 of the Stop Notice Act protects the Romeros from Tabet's lien. We affirm the district court's grant of summary judgment in favor of the Romeros.

## IV

Finally, we address whether the district court erred in awarding attorney's fees to the Romeros under NMSA 1978, Section 48-2-14 (Repl.Pamp.1987). Tabet claims that Section 48-2-14 does not allow recovery of attorney's fees by homeowners. We agree.

Section 48-2-14 provides "[a]ny number of persons claiming liens may join in the same action. . . . The court may also allow, as part of the costs . . . reasonable attorney's fee[s]. . . ." "Absent statutory authority or rule of court, attorney fees are not recoverable as an item of damages." *Hiatt v. Keil,* 106 N.M. 3, 4, 738 P.2d 121, 122 (1987). Our interpretation of this statute to date has been that "the court may allow a reasonable attorney's fee in an action to enforce the liens in the trial and appellate courts." *Lenz v. Chalamidas,* 109 N.M. 113, 118, 782 P.2d 85, 90 (1989). In *Ulibarri v. Gee,* we held that "[u]nder Section 48-2-14, the court simply allows recovery of a 'reasonable attorney's fee' from the owner." 106 N.M. 637, 639, 748 P.2d 10, 12 (1987). Although it is clear that Section 48-2-14 allows for the award of attorney's fees to successful lien holders, this Court has never been asked to decide whether that Section can be used by the courts to award attorney fees to homeowners as well.

We begin our analysis by determining the purpose of our lien statutes. Section 48-2-14 is contained within the Mechanics' and Materialmen's Lien Act, NMSA 1978, §§ 48-2-1 to -17 (Repl.Pamp.1987) ("the Act"). We have previously held that "[t]he purpose of our lien statute is 'to protect those who, by their labor, services, skill, or materials furnished, have enhanced the value of the property sought to be charged.' " *Vulcraft v. Midtown Business Park, Ltd.,* 110 N.M. 761, 765, 800 P.2d 195, 199 (1990) (quoting *Hobbs v. Spiegelberg,* 3 N.M. 357, 363, 5 P. 529, 531 (1885)).

Next, we interpret the language of Section 48-2-14, keeping in mind that "[w]ords used in a statute are to be given their ordinary and usual meaning unless a different intent is clearly indicated. Moreover, this Court will not read into a statute language which is not there, particularly if it makes sense as written." *State ex rel. Duran v. Anaya,* 102 N.M. 609, 611, 698 P.2d 882, 884 (1985) (citation omitted). A common-sense reading of Section 48-2-14, with the purposes behind the Act in mind, leads us to determine that the Act is meant to protect lien holders and not homeowners. The plain language of Section 48-2-14 allows persons filing liens to recover attorney fees if they are successful. There is nothing in the language of Section 48-2-14 that allows a homeowner who has to defend against a wrongful lien to recover attorney fees. Rather, homeowners are protected by the Stop Notice Act. The Stop Notice Act, however, does not contain a provision for the award of attorney fees to homeowners, thus there is no statute or rule under which the Romeros were permitted to recover attorney's fees. Accordingly, we reverse the district court's award of attorney's fees and deny attorney's fees on appeal.

In conclusion, we **AFFIRM** the district court's grant of summary judgment and **REVERSE** the district court's award of attorney's fees.

**IT IS SO ORDERED.**

MONTGOMERY, C.J., and RANSOM, J., concur.