880 P.2d 861

**SUNDANCE MECHANICAL & UTILITY CORPORATION, a New Mexico corporation, Plaintiff–Appellant,**

v.

**Marvin F. ATLAS and Carole J. Atlas, husband and wife, et al., Defendants–Appellees.**

**No. 21159.**

Supreme Court of New Mexico.

Aug. 9, 1994.

Rehearing Denied Sept. 9, 1994.

Paul S. Wainwright, P.A., Paul S. Wainwright, Albuquerque, for appellant.

Threet & King, Martin E. Threet, Robert G. Kavanagh, Albuquerque, for appellees.

## OPINION

BACA, Justice.

Plaintiff–Appellant, Sundance Mechanical & Utility Corporation ("Sundance"), appeals from the district court's decision concluding that Defendants–Appellees, Marvin and Carole Atlas (the "Atlases"), were entitled to the benefit of NMSA 1978, Section 48–2–10.1(A) (Repl.Pamp.1987) (mandating the conditions for discharge of a materialman's lien). On appeal we decide whether the district court erred when it determined that the Atlases were entitled to the benefit of Section 48–2–10.1(A). We review this case under SCRA 1986, 12–102(A)(1) (Repl.Pamp.1992), and reverse.

### I.

This lawsuit arises out of a house-building contract between the Atlases and Robert Eden, doing business as R.J. Eden Construction Company ("Eden"). On November 19, 1985, the Atlases entered into a contract with Eden for the construction of a residence on certain real property owned by the Atlases. The original contract payment amount was $331,554.09. The contract required Eden to furnish labor, services, and materials for construction of the house.

On December 31, 1985, Eden, acting as general contractor, entered into a written contract with Sundance that, in essence, called for Sundance to perform certain subcontract work on the Atlases' house. Between September 2, 1986, and October 13, 1986, Eden and Sundance performed work on the residence. On October 13, 1986, before construction was completed, the Atlases terminated Eden's contract as general contractor and began personally supervising the construction of the residence. Between September 19, 1986, and June 18, 1987, the Atlases paid various subcontractors and suppliers $43,412.20 for work performed and materials supplied.

Sundance completed its work on the residence on October 30, 1986. At this time Eden owed Sundance $14,637.80 for the work performed. On October 31, 1986, Sundance filed a claim of lien against the Atlases in the County Clerk's office in Bernalillo County. On February 17, 1987, the Atlases paid Sundance $3,000 to reduce the claim of lien to $11,637.80.

On March 19, 1987, Sundance filed a complaint for debt and money due and sought to foreclose its claim of lien against the Atlases' residence. On June 12, 1987, Sundance filed a motion for summary judgment with respect to certain counts in its complaint. The district court granted Sundance's motion on March 9, 1988, and awarded Sundance a judgment against the real property of Eden and the Atlases in the amount of $18,557.39. The court also ordered foreclosure of Sundance's lien and appointed a special master to sell the property. On March 10, 1988, and March 18, 1988, the Atlases paid Sundance a total of $18,557.39 to satisfy the judgment. Sundance accepted this amount as payment in full and subsequently filed a satisfaction and release of judgment.

On March 21, 1988, despite having paid the judgment amount, the Atlases filed a pro se motion to set aside the judgment in favor of Sundance. On October 14, 1988, the Atlases, through an attorney, filed a second motion seeking relief from the district court's grant of summary judgment in favor of Sundance. On December 7, 1988, the district court issued an order finding that because of a serious illness suffered by Marvin Atlas, the judgment in favor of Sundance was improvidently entered. The court set aside the judgment and ordered a rehearing on the matter at a later date.

A hearing was held on November 18, 1992. The district court filed its findings of fact, conclusions of law, and decision on January 4,

1993. The court incorporated in its decision certain findings made in a May 25, 1988, arbitration proceeding between the Atlases and Eden. The arbitration proceeding adjudicated issues pertaining to the construction contract between those parties, and the final arbitration award was confirmed by the district court on September 8, 1988. Based upon the findings of the arbitrator, the court determined that Eden "was paid all amounts due and owing in full prior to the time that [Sundance] ... filed its Claim of Lien." The court also determined that "[the Atlases were] unaware of any unpaid [subcontractor] at the time of final payment to Eden" and that the date of full and final payment under the contract was September 2, 1986. The court concluded that the Atlases were "entitled to the benefit of [Section 48–2–10.1(A) and that Sundance's lien was] discharged from the [s]ubject [r]eal [p]roperty." Accordingly, the court ruled that Sundance "should take nothing by virtue of its Claim of Lien" and required Sundance to "refund to the [Atlases the] amounts paid to it." Sundance appeals the district court's decision to this Court.

## II.

■ On appeal we address whether the district court erred by concluding that the Atlases were entitled to the benefit of Section 48–2–10.1(A). This Section, which has subsequently been repealed by 1989 N.M. Laws, chapter 301, section 13, stated in pertinent part that

> [p]ayment by the owner or his successor in interest to any person entitled to such payment of all amounts due and owing for any construction, improvement, landscaping or other actions the performance of which could give rise to a lien pursuant to [NMSA 1978, Section 48–2–2 (Repl.Pamp. 1987) ] to be performed upon a residence containing not more than four dwelling units shall discharge all such liens unless prior to such payment any person who is entitled to such lien has filed for record his lien pursuant to [NMSA 1978, Section 48–2–6 (Repl.Pamp.1987) ].

Section 48–2–10.1(A). Stated in straightforward terms, Section 48–2–10.1(A) discharges any subcontractor lien filed after a property owner has paid all amounts due and owing to the general contractor. *See Aztec Wood Interiors, Inc. v. Andrade Homes, Inc.,* 104 N.M. 45, 46, 716 P.2d 236, 237 (1986) (holding that in order to achieve the benefit of Section 48–2–10.1(A), the subcontractor "must have filed its lien prior to the time the [homeowners] made the final payment"). Furthermore, to receive the benefit of Section 48–2–10.1(A), the owner must be an "innocent owner." *See Pyburn v. Kirkpatrick,* 106 N.M. 247, 248–49, 741 P.2d 1368, 1369–70 (1987); *C & D Plumbing, Inc. v. Armstrong,* 106 N.M. 155, 156, 740 P.2d 705, 706 (1987); *Aztec Wood Interiors,* 104 N.M. at 47, 716 P.2d at 238. Contrary to the district court's decision, we conclude that the Atlases neither paid "all amounts due and owing" under the contract nor constituted "innocent owners" as this term has been defined by our case law. We hold that the court erred in deciding that the Atlases were entitled to the benefit of Section 48–2–10.1(A).

### A.

■ Section 48–2–10.1(A) first requires that an owner pay the general contractor "all amounts due and owing" on the contract before the owner can avail itself of the benefit of the statute. We have interpreted payment of "all amounts due and owing" to mean *final* payment rather than partial payment. *C & D Plumbing,* 106 N.M. at 156, 740 P.2d at 706. According to the facts stipulated by the parties prior to trial, the amount due on the contract between the Atlases and Eden was $331,554.09. The uncontroverted facts also show that the Atlases paid Eden $279,615.69 on the contract. These facts establish that the Atlases failed to make full and final payment to Eden under the contract between the parties.

The Atlases argue that they paid "all amounts due and owing" to Eden by September 2, 1986, nearly two months before Sundance filed its lien. In making this argument, the Atlases rely on the district court's finding of fact that the amount owed under the contract between the Atlases and Eden was paid in full "prior to the time that [Sundance] filed its claim of lien." This finding of

fact adopted the arbitrator's finding that the amount of the contract between the Atlases and Eden was $278,927.49. Based on this finding by the arbitrator, the district court decided that by paying $279,615.69 to Eden, the Atlases had paid "all amounts due and owing" on the contract.

By adopting the arbitrator's finding that the contract amount was $278,927.49, the district court ignored the stipulated fact that the contract amount was $331,554.09 and, in essence, gave the finding made during the arbitration proceeding collateral estoppel effect against Sundance. We hold that the district court erred by giving the arbitrator's finding preclusive effect. The issue of whether factual findings in an arbitration proceeding have collateral estoppel effect in subsequent litigation has not been addressed by our courts. Nevertheless, we need not decide this issue today because certain factors necessary to apply the doctrine of collateral estoppel are not present in the instant case. In order for the doctrine of collateral estoppel to preclude relitigation of an issue, the party to be estopped must have been a party or in privity with a party to the first proceeding. *See Shovelin v. Central N.M. Elec. Coop.,* 115 N.M. 293, 297, 850 P.2d 996, 1000 (1993); *Silva v. State,* 106 N.M. 472, 474, 745 P.2d 380, 382 (1987). "[F]airness requires that the party against whom estoppel is asserted had a full and fair opportunity to litigate" the issue in the earlier proceeding. *Silva,* 106 N.M. at 474, 745 P.2d at 382; *see also Shovelin,* 115 N.M. at 297, 850 P.2d at 1000. In this case Sundance was not a party or in privity with a party to the arbitration proceeding between the Atlases and Eden and, consequently, did not have a full and fair opportunity to litigate issues in that proceeding.

We hold that the findings made in the arbitration proceeding can have no collateral estoppel effect against Sundance in its case against the Atlases. The trial court erred in giving preclusive effect to the arbitrator's finding that the amount of the contract between the Atlases and Eden was $278,927.49. Because Sundance and the Atlases stipulated prior to trial that the contract amount was $331,554.09, the Atlases, having paid only

$279,615.69 to Eden, failed to pay "all amounts due and owing" on the contract. Consequently, the Atlases are not entitled to the benefit of Section 48–2–10.1(A).

### B.

Our interpretation of Section 48–2–10.1(A) requires that the owner be an "innocent owner" in order to obtain the benefit of the statute. *C & D Plumbing,* 106 N.M. at 156, 740 P.2d at 706. An "innocent owner" is defined as an owner "who had no notice, actual or constructive, of intervening claims by unpaid materialmen." *C & D Plumbing,* 106 N.M. at 156, 740 P.2d at 706. We emphasize that the notice that precludes an owner from being an "innocent owner" is either notice of a subcontractor's claim of debt or notice of a claim of lien. *See Pyburn,* 106 N.M. at 248–49, 741 P.2d at 1369–70. Here the Atlases were not only aware of Sundance's claim of debt but also its claim of lien. The district court found that the Atlases had paid Sundance $3,000 to reduce the claim of lien to $11,637.80 on February 17, 1987. The Atlases, having actual notice of the debt and lien, cannot be considered "innocent owners."

One additional point merits discussion. An owner cannot be considered an "innocent owner" if the owner has constructive knowledge of unpaid claims. The Atlases fired Eden and assumed the role of general contractor for the house-building project on October 13, 1986. We can presume that a general contractor has knowledge of the unpaid claims of its subcontractors. Therefore, we attribute constructive knowledge of Sundance's unpaid claim to the Atlases on October 13, 1986, the date that they assumed the role of general contractor.

The Atlases argue that they paid all "amounts due and owing" to Eden on September 2, 1986, and that on this date they had no knowledge of Sundance's unpaid claims. Thus, the Atlases claim that they qualified as "innocent owners" for the purpose of Section 48–2–10.1(A). We have held that the district court erred by incorporating into its decision the arbitrator's finding that the contract between the Atlases and Eden

was for the amount of $278,927.49. We also have held that the Atlases never paid the full amount on their contract with Eden. Consequently, the Atlases' argument that they paid all "amounts due and owing" on September 2, 1986, is without merit, and whether they had knowledge of Sundance's claim of debt on that date is immaterial.

## C.

Relying on *Vulcraft v. Midtown Business Park, Ltd.*, 110 N.M. 761, 800 P.2d 195 (1990), and *Terry v. Pipkin*, 66 N.M. 4, 340 P.2d 840 (1959), Sundance argues that privity of contract existed between it and the Atlases, and that should we find against it on the other claims, it would be entitled to bring a claim against the Atlases for unjust enrichment. In *Vulcraft* we concluded that Section 48–2–2 (Repl.Pamp.1987), a mechanics' and materialmen's lien statute, "creates privity of contract between the owner and those contributing to the enhancement of the property." 110 N.M. at 765, 800 P.2d at 199. The Tenth Circuit has read *Terry* to stand for the proposition that "a subcontractor who has lost his mechanic's lien claim against a property owner may have a claim in quantum meruit where the owner has not paid the general contractor." *United States ex rel. Sunworks Div. of Sun Collector Corp. v. Insurance Co. of N. Am.*, 695 F.2d 455, 458 (10th Cir.1982).

 We disagree that Sundance has a claim against the Atlases for unjust enrichment. In *Hydro Conduit Corp. v. Kemble*, 110 N.M. 173, 176, 793 P.2d 855, 858 (1990), we noted that "[w]hatever may be the law generally as to the availability of a claim for restitution in favor of a subcontractor against a property owner[,] ... it is clear that a claim for unjust enrichment cannot be maintained against the property owner when he has already paid for the services performed or materials supplied by the subcontractor." In this case the facts show that while the Atlases have not paid Eden the full amount "due and owing" on the contract, they have paid a substantial portion thereof. Generally, a subcontractor cannot recover against the landowner in quasi-contract when that landowner has paid "a very substantial part" of the contract amount to the general contractor. *See* Annotation, *Building and Construction Contracts: Right of Subcontractor Who Has Dealt Only with Primary Contractor to Recover Against Property Owner in Quasi Contract*, 62 A.L.R.3d 288, 295 (1975). Under these circumstances we believe that Sundance's claims are against Eden, not the Atlases. We hold that Sundance's claim for unjust enrichment is without merit.

In conclusion, we hold that the district court erred when it decided that the Atlases were entitled to the benefit of Section 48–2–10.1(A). We reverse the decision of the district court and hold that Sundance is entitled to keep the money the Atlases paid to it in satisfaction of the March 9, 1988, district court judgment.

IT IS SO ORDERED.

RANSOM and FROST, JJ., concur.