917 P.2d 967

**Terry WADE and Nelda Wade, Plaintiffs/Appellants/Cross–Appellees,**

**v.**

**Mark FARNSWORTH d/b/a Western Trend Construction; Royal Floor Covering, Inc.; Medallion Heating, Inc.; Medallion Electric; and Harding Glass, A.C. Houston Lumber Company, Defendants/Appellees/Cross–Appellants.**

**No. 16930.**

Court of Appeals of New Mexico.

April 2, 1996.

Certiorari Denied May 29, 1996.

Thomas J. Hynes, Hynes, Hale & Thrower, Farmington, for Appellants/Cross–Appellees.

F. Douglas Moeller, Farmington, for Appellee/Cross–Appellant Farnsworth.

John A. Dean, Jr., Curtis & Dean, Farmington, for Appellees/Cross–Appellants Royal Floor, Medallion Heating, and Medallion Electric.

Robert Dale Morrison, Law Offices of Robert Dale Morrison, Albuquerque, for Appellee/Cross–Appellant A.C. Houston Lumber Company.

*OPINION*

PICKARD, Judge.

1. Plaintiffs appeal the district court's judgment validating certain liens that were imposed upon Plaintiffs' real property. Defendants Farnsworth and Houston Lumber both filed cross-appeals. Our first calendar notice proposed to affirm the judgment in all respects, and Plaintiffs have responded with a memorandum in opposition. Neither Farnsworth nor Houston filed memoranda opposing the proposed affirmance. We are not persuaded by Plaintiffs' memorandum and affirm for the reasons stated below. In addition, given the other parties' lack of response to the calendar notice, we affirm the issues raised in the cross-appeals for the reasons stated in that notice. *See Frick v. Veazey,* 116 N.M. 246, 247, 861 P.2d 287, 288 (Ct.App.1993) (when no memorandum opposing the proposed disposition is filed, the Court will decide the case in accordance with the calendar notice).

FACTS

2. Plaintiffs contracted with Farnsworth, a building contractor, to build a house for Plaintiffs at a price of $202,000. Due to an error, the nature of which is not clear, Farnsworth built a house that was much bigger than the contracted-for residence. Possibly for that reason, Farnsworth also ran into financial difficulties and fell behind on his payments to material suppliers and subcontractors. After Plaintiffs had paid

Farnsworth $192,000 of the agreed-upon price, they discovered that liens in excess of $60,000 had been filed against the house by Houston and other suppliers and subcontractors. Plaintiffs filed suit against Farnsworth, Houston, and the other material suppliers and subcontractors, seeking to invalidate the liens and to obtain damages for breach of contract. Houston and the other lien-holders counter-claimed for the amounts of their liens.

3. After a bench trial, the judge awarded Houston and the other counter-claimants an amount equal to all the liens, plus attorney fees and costs for each lien-holder. The judge also awarded Plaintiffs judgment against Farnsworth for the entire amount of liens and attorney fees for which Plaintiffs had been held liable, less certain amounts such as the unpaid $10,000 and a cost allowance for the increased size of the house. Plaintiffs appealed, claiming that Houston had misapplied payments made by Farnsworth that should have been applied to Plaintiffs' account. Plaintiffs also claimed that all of the liens should have been held partially invalid, because Plaintiffs had already made partial payments to Farnsworth before the liens were obtained. Houston cross-appealed the award of attorney fees, and Farnsworth cross-appealed the measure of damages used by the judge. As we noted above, neither Houston nor Farnsworth filed a memorandum opposing our proposed disposition of this appeal.

DISCUSSION

1. *Misapplication of Payments*

■ 4. The first issue we discuss concerns the asserted misapplication of payments by Houston. Plaintiffs maintain that Farnsworth made several payments to Houston during the relevant period. Of these payments, a total of approximately $50,000 came from the funds Plaintiffs had paid to Farnsworth; that is, Plaintiffs were the source of approximately $50,000 of payments made to Houston. Yet, Plaintiffs contend, Houston applied most of these payments to accounts other than Plaintiffs'. In addition, Plaintiffs contend that Houston violated its own policy concerning the last payment made by Farnsworth. Houston's policy was to ap-

ply payments from a contractor to the oldest account of that contractor, and at the time of the last payment Plaintiffs' account was Farnsworth's oldest account with Houston. Yet, Houston did not apply the payment to Plaintiffs' account, because Houston had been informed that there was a problem with that account and liens were being filed against the residence. Plaintiffs maintain that Houston's actions were inequitable.

■ 5. We note that there has been no contention that Houston knew the source of the funds that Farnsworth used to make the various payments, including the last payment. It is a general rule of law that if a creditor knows the source of a payment that is made by a debtor, the creditor must apply that payment in a manner that will protect the rights of the party supplying the funds. *Ag–Chem Farm Servs., Inc. v. Coberly,* 105 N.M. 384, 387, 733 P.2d 15, 18 (Ct.App.1987). In this case, therefore, if Houston had known that Plaintiffs were the source of any payment made by Farnsworth, Houston would have been required to apply that payment to Plaintiffs' account rather than other accounts. In the absence of such knowledge, however, Houston was free to apply the payments in any manner necessary and appropriate to protect its interests. *See Jackson v. A.B.Z. Lumber Co.,* 392 P.2d 288, 291 (Colo.1964); *Anchor Lumber Co. v. United Exteriors, Inc.,* 604 S.W.2d 754, 757 (Mo.Ct. App.1980). Houston did not know the source of any of the payments made by Farnsworth and was therefore free to apply those payments to whatever accounts it wished.

6. Plaintiffs emphasize the fact that Houston failed to follow its own established practice when it applied the last payment made by Farnsworth to an account other than Plaintiffs'. As we noted above, however, Houston was free to protect its interests in whatever way it saw fit, and apply the payment in whatever way it saw fit, because Houston did not know that Plaintiffs were the source of the payment. The equitable considerations argued by Plaintiffs are taken into account in the general rule applicable to this case. If a creditor knows the source of funds that comprise a payment, the creditor is bound in equity to apply the payment to

the source's account. Without such knowledge, however, equity will ordinarily not impose a restriction on the application of the funds. While it is possible that in exceptional circumstances equitable considerations might intervene even in the absence of a creditor's knowledge of the source of the funds, this is not such a case. Houston had been informed that there was a problem with Plaintiffs' account, and subsequently received a $7,000 payment from Farnsworth. Houston made a business decision to apply that payment to other accounts, given the potential problem with Plaintiffs' account. Since there is no contention that Houston knew Plaintiffs had been the source of the $7,000 payment, it was not unfair or inequitable for Houston to apply the payment as it saw fit.

## 2. *Lien Statute*

7. The second issue presented by this case involves a statutory interpretation question. Prior to 1989, there was a statute in effect in this state that allowed an owner to prevent the attachment of material suppliers' or subcontractors' liens. This could be accomplished by payment of the entire contract amount to the general contractor, before the liens were filed. NMSA 1978, § 48–2–10.1 (Cum.Supp.1985); *C & D Plumbing, Inc. v. Armstrong,* 106 N.M. 155, 156, 740 P.2d 705, 706 (1987) (language in this provision, requiring payment of "all amounts due and owing" to effect discharge of liens, means full and final payment of contract price). In 1989, the legislature repealed Section 48–2–10.1, moved the provisions of that statute to a different section, and changed the language of subsection A to require payment prior to the filing of a lien of "all and any amounts due and owing[.]" NMSA 1978, § 48–2A–11 (Repl.Pamp.1995). This provision is now part of the Stop Notice Act, NMSA 1978, §§ 48–2A–1 to –12 (Repl.Pamp.1995), a statute that provides protections for subcontractors and material suppliers above and beyond the ability to impose a lien on buildings or other structures.

8. Plaintiffs contend that the legislature, by adding the phrase "and any" to the provision, changed the rule that the entire contract price must be paid before a lien is obtained in order to discharge the lien. According to Plaintiffs, the payment of any amount owed is enough, whether the payment is partial or total. Plaintiffs necessarily contend that the legislature intended to abrogate the rule set out in the *C & D Plumbing* case and other cases discussing this issue under the former version of the statute. We disagree.

9. In our calendar notice, we proposed to hold that the legislature intended no such change. We pointed out that the phrase "all and any" is, if anything, more inclusive than the word "all" standing alone. We also pointed out that, if Plaintiffs' position was correct, it would render meaningless the ability of any subcontractor or material supplier to obtain a lien to protect its right to payment. An owner could prevent that occurrence simply by making one partial payment to the contractor, before any of the subcontractors or material suppliers knew they were not going to be paid, and even before they were engaged to perform the services or supply the materials.

10. In response to the calendar notice, Plaintiffs make a number of arguments. Plaintiffs first take issue with our position that the legislature did not intend to change existing law by repealing the old provision and adding the words "and any" to the statute. Plaintiffs point out that courts generally will not construe a statute to impute a useless act to the legislature. *See Allen v. Amoco Prod. Co.,* 114 N.M. 18, 20, 833 P.2d 1199, 1201 (Ct.App.1992). We do not believe, however, that we are doing so. In our view, the old Section 48–2–10.1 was repealed only so that it could be moved to become part of the Stop Notice Act. While moving the provision, the legislature added the words "and any" to the statute to provide additional emphasis that all amounts due to the primary contractor or contractors must be .paid in order to discharge subsequent liens. The plain language of the statute exhibits this intention. The phrase "all and any" means just that—the whole amount due, including any sub-parts that might comprise that whole amount. *Cf., e.g., Black's Law Dictionary* 74 (6th ed. 1990) (defining the phrase "all and singular" to mean "all without excep-

tion" and calling it a comprehensive term which includes the aggregate, or the whole, and also each of the separate items or components).

**■** 11. Where, as here, the language of the statute is unambiguous, we must give the words their exact meaning and there is no room for interpretation. *See Garcia v. Thong,* 119 N.M. 704, 706, 895 P.2d 226, 228 (1995). We must therefore reject Plaintiffs' invitation to read the phrase "all and any" to mean "all or any" amounts due and owing.

12. Contrary to another of Plaintiffs' assertions, we do not see that our interpretation leads to an absurd result. Plaintiffs maintain that nothing can be more inclusive than the word "all," that the addition of "and any" would therefore be superfluous, and that this is an absurd result that should be avoided by construing "and" to mean "or." We note, however, that lawyers and legislators often engage in what might be considered overkill in their effort to close every possible loophole. For example, the phrase "any and all" is common in legal documents, and is a comprehensive term that, in essence, means "all". *See, e.g., Krebs v. Bailey's Equip. Rentals, Inc.,* 328 So.2d 775, 777 (La. Ct.App.1976) (using the phrase "any and all amounts due and owing" to mean all amounts to which the plaintiff was entitled under a contract). We do not believe the meaning should be different because the terms "any" and "all" are reversed in position in Section 48–2A–11. Similarly, the phrase "all and singular," as discussed above, is an effort to be even more comprehensive, if that is possible, than "all" standing alone. We therefore hold that it is not absurd to construe the change in the statute as an effort to emphasize the importance of paying all of the amounts due and owing on the contract, rather than to assume the legislature erred in using the word "and" and meant to say "or."

13. We note, in addition, that Plaintiffs' arguments concerning the practical effect of their proposed interpretation are not persuasive. Plaintiffs contend that they did not ask that the entire amounts of the liens be discharged as a result of their partial payments toward the contract amount. Instead, Plaintiffs propose that only a portion of the liens

be discharged, in proportion to the amount they had already paid on the contract at the time the liens were imposed. Alternatively, Plaintiffs argue that the lien-holders' recovery should be limited to the amount still owed by Plaintiffs to Farnsworth, or $10,000. Finally, Plaintiffs contend that the liens of any supplier or subcontractor that had invoked the provisions of the Stop Notice Act could be exempted from discharge. The difficulty with all of these proposals is the same—nothing in the applicable statutes can even remotely be construed as containing such remedies or limitations on remedies. Section 48–2A–11 plainly states that payment of all and any amounts due and owing on the contract discharges liens that are obtained after such payment. There is no room for a proportional rebate of the lien amounts, and no language suggesting that compliance with the Stop Notice Act could override the fact of prior payment. If Section 48–2A–11 were construed as Plaintiffs suggest, the effect would be the same—partial payment of the contract amount would discharge the whole amount of all subsequent liens, regardless of the lienholder's compliance with the Stop Notice Act or of the amounts still owing on the contract. Since Plaintiffs' proposals for avoiding this result would require radical revisions of the statutory scheme, we decline to adopt those proposals.

**■** 14. Plaintiffs contend that we must interpret the statute and the amendment to effectuate the legislature's intentions. We agree. Our view, as we pointed out above, is that the legislature did not intend to abrogate the rule of *C & D Plumbing* and other cases. Instead, the legislature intended to emphasize that rule. That interpretation of legislative intent comports with the plain language of the statute. Accordingly, we will apply that language as follows: payment of all and any amounts due and owing, which means payment of all amounts still owing under the original contract (and, presumably, any valid modifications to the contract), is the only way to discharge liens that are subsequently imposed upon the property. Partial payment to the contractor is not sufficient to do so.

15. Based on the foregoing, we affirm the judgment entered in this case. The parties shall bear their own costs and attorney fees on appeal.

16. **IT IS SO ORDERED.**

DONNELLY and ALARID, JJ., concur.