This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41499**

**ROBERT RODRIGUEZ,**

     Plaintiff-Appellant,

v.

**LOYA INSURANCE COMPANY,**

     Defendant-Appellee.

and

**ASHLEY SHROULOTE,**

     Defendant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Nancy J. Franchini, District Court Judge**

Williams Injury Law, PC
Bryan Williams
Albuquerque, NM

Winger Law Firm, PC
Nathan Winger
Albuquerque, NM

for Appellant

Jennings Haug Keleher McLeod
Joseph A. Brophy
Albuquerque, NM

for Appellee

**MEMORANDUM OPINION**

**WRAY, Judge.**

**{1}** Plaintiff Robert Rodriguez appeals two orders of the district court. First, Plaintiff argues that the district court applied the incorrect legal standard to set aside an order that granted partial summary judgment to Plaintiff (the PSJ order) and that Defendant Loya Insurance Company (Loya) did not establish a basis to set aside the PSJ order. Second, Plaintiff argues that disputed questions of fact regarding the meaning of the term "insured" in the insurance policy (the Policy) prevented summary judgment in favor of Loya. We conclude that the district court did not abuse its discretion in setting aside the PSJ order but also that extrinsic evidence revealed ambiguities about whether Plaintiff qualified as an "insured" for uninsured motorist (UM) coverage under the Policy. We construe the ambiguity in favor of Plaintiff and reverse in part.

**BACKGROUND**

**{2}** Plaintiff filed a complaint in the district court against the tortfeasor defendant and Loya for personal injuries, declaratory judgment, recovery of UM benefits, breach of contract, insurance bad faith, and other statutory violations. Plaintiff served Loya through the Office of the Superintendent of Insurance on April 30, 2020, but Loya did not at that time file an answer to Plaintiff's complaint. The tortfeasor defendant also did not file an answer. Plaintiff obtained an entry of default judgment against the tortfeasor defendant, and on September 27, 2021, a judgment for damages was entered against her. On December 3, 2021, Plaintiff moved for partial summary judgment as to liability against Loya. On January 19, 2022, the district court entered the PSJ order. Loya had still not answered the complaint when the PSJ order was entered.

**{3}** Based on the PSJ order, Plaintiff sent Loya a demand letter dated January 21, 2022. Loya filed an entry of appearance on February 11, 2022, and on March 31, 2022, Loya moved to set aside the PSJ order. The district court granted Loya's motion and set aside the PSJ order. Later, the district court entered summary judgment in favor of Loya and dismissed the case.

**DISCUSSION**

**{4}** We address Plaintiff's two appellate arguments in turn.

**I.    The PSJ Order**

**{5}** Plaintiff first argues that the district court applied the incorrect standard to set aside the PSJ order, and that under any applicable law, Loya did not establish a basis to set aside the PSJ order. We review the district court's decision to set aside an order granting partial summary judgment for abuse of discretion. *See Bell v. N.M. Interstate Stream Comm'n*, 1996-NMCA-010, ¶ 15, 121 N.M. 328, 911 P.2d 222 ("[T]he grant of a motion for partial summary judgment or denial of a motion for summary judgment is an interlocutory order."); *Tabet Lumber Co. v. Romero*, 1994-NMSC-033, ¶¶ 5-6, 117 N.M. 429, 872 P.2d 847 (reviewing a "district court's decision to change its ruling" on an

interlocutory order for abuse of discretion). A district court abuses its discretion when its decision "is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case" or "when it applies an incorrect standard, incorrect substantive law, or its discretionary decision is premised on a misapprehension of the law." *Sandoval v. Baker Hughes Oilfield Operations., Inc.*, 2009-NMCA-095, ¶ 14, 146 N.M. 853, 215 P.3d 791 (internal quotation marks and citation omitted).

**{6}** The parties' arguments, and as a result, the district court's decision, focus on the application of multiple rules to Plaintiff's motion for partial summary judgment. In the order setting aside the PSJ order, the district court (1) determined that the motion for partial summary judgment was not properly supported as required by Rule 1-056 NMRA; (2) explained that the application of Rule 1-055(C) NMRA was based on its view that the motion for partial summary judgment was "actually a motion for default [judgment]"; and (3) alternatively determined that if the PSJ order was a "judgment" as contemplated by Rule 1-060(B) NMRA, that rule also applied to set aside the PSJ order. On appeal, Plaintiff maintains that the PSJ order was appropriate based on Rule 1-008(D) NMRA and Loya's failure to answer, that Rules 1-055(C) and 1-060(B) did not apply, and that Loya "failed to cite any law which support[ed] its request to set aside the summary judgment against it." Loya contends that the district court was correct to set aside the partial summary judgment pursuant to Rule 1-055(C)'s "good cause" standard. We need not delve into these questions, however, because the district court had the inherent authority to set aside its interlocutory order granting partial summary judgment. *See Tabet Lumber Co.*,1994-NMSC-033, ¶ 6; *see also id.* ("The grant or denial of a motion for summary judgement is an interlocutory order."); *Aetna Life Ins. Co. v. Nix*, 1973-NMSC-069, ¶ 4, 85 N.M. 415, 512 P.2d 1251 (observing that an order granting partial summary judgment is not final).

**{7}** Even under Plaintiff's view of the motion for partial summary judgment, the district court appropriately exercised its inherent authority to reconsider an interlocutory order. On appeal, Plaintiff argues that the district court applied the wrong rules because the motion was for partial summary judgment and was not a motion for default judgment. Viewing the motion as Plaintiff does, the district court simply had the discretion to set aside the interlocutory ruling without the need for justification under Rule 1-055(C), which applies to motions for default judgment, or Rule 1-060(B), which applies to final judgments. A motion for partial summary judgment is neither. As a result, as Plaintiff notes, neither rule would apply, but Plaintiff disregards the interlocutory nature of the partial summary judgment ruling. Setting aside an order for partial summary judgment is an appropriate exercise of the district court's "inherent authority" to not "perpetuate error when it realizes it has mistakenly ruled." *Tabet Lumber Co.*, 1994-NMSC-033, ¶ 6 (internal quotation marks and citation omitted). Thus, even according to Plaintiff's view of the motion, we discern no abuse of discretion. *See Atherton v. Gopin*, 2015-NMCA-003, ¶ 36, 340 P.3d 630 ("We may affirm the district court's order on grounds not relied upon by the district court if those grounds do not require us to look beyond the factual allegations that were raised and considered below." (alteration, internal quotation marks, and citation omitted)).

## II.      The District Court's Order Granting Summary Judgment to Loya

**{8}**      A year later, the district court granted summary judgment to Loya after determining that the Policy unambiguously defined who was an "insured" for the purposes of UM coverage and that no extrinsic evidence created any ambiguity about Plaintiff's status as an insured. We review an order granting summary judgment de novo. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 5, 137 N.M. 339, 110 P.3d 1076. Summary judgment is appropriate if there is no genuine issue of material fact and "the moving party is entitled to a judgment as a matter of law." *Rummel v. Lexington Ins. Co.*, 1997-NMSC-041, ¶ 15, 123 N.M. 752, 945 P.2d 970 (internal quotation marks and citation omitted). We look first to the terms of the Policy. *See id.* ¶ 18 ("We will disentangle this case by applying principles of contract construction to the language of [the defendant]'s policy.").

**{9}**      Throughout the Policy, the terms "[y]ou" and "an insured person" are used in various contexts. The terms "You" and "Your" are generally, with small deviations not relevant to the present appeal, defined as "a person shown as named insured on the Declarations Page and that person's spouse if residing in the same household." The term "Insured Person" is defined in slightly different ways in each of the four parts of the Policy that address different types of coverage. In the Policy part addressing UM coverage specifically, "[i]nsured person" is defined as (1) "you or a relative"; or (2) in relation to either a "covered vehicle" or certain "non[]owned vehicle[s]."

**{10}**      By the express terms of the Policy relating to UM coverage, Plaintiff is not an insured person. Plaintiff's name is not located anywhere on the Declarations Page, nor was Plaintiff married to the "named insured," Plaintiff's girlfriend, at the time of the incident. As a result, according to its terms, Plaintiff was not "you" under the Policy and he was not a relative of the named insured. Nor do the circumstances of the present case implicate a covered or appropriate nonowned vehicle.

**{11}**      Nevertheless, Plaintiff argues that extrinsic evidence demonstrates that the Policy was ambiguous about whether he was an insured under the Policy. Our Supreme Court has explained that a court may "use extrinsic evidence to determine if an ambiguity existed." *Ponder v. State Farm Mut. Auto. Ins. Co.*, 2000-NMSC-033, ¶ 13, 129 N.M. 698, 12 P.3d 960; *see also Mark V, Inc. v. Mellekas*, 1993-NMSC-001, ¶ 12, 114 N.M. 778, 845 P.2d 1232 (concluding that New Mexico courts may "consider extrinsic evidence to make a preliminary finding on the question of ambiguity"); *C.R. Anthony Co. v. Loretto Mall Partners*, 1991-NMSC-070, ¶ 15, 112 N.M. 504, 817 P.2d 238 ("[A] court may hear evidence of the circumstances surrounding the making of the contract and of any relevant usage of trade, course of dealing, and course of performance."). We construe insurance policies as a whole to determine whether any ambiguities exist. *See Rummel*, 1997-NMSC-041, ¶ 20. If a "contract is reasonably and fairly susceptible of different constructions, an ambiguity exists." *Mark V, Inc.*, 1993-NMSC-001, ¶ 12. We generally construe ambiguities "in favor of the insured and against the insurer," so that if any part of the policy is ambiguous, our "construction of an

insurance policy will be guided by the reasonable expectations of the insured." *Ponder*, 2000-NMSC-033, ¶ 26 (internal quotation marks and citation omitted).

**{12}** In the present case, the proof of insurance card and policy change forms create an ambiguity about whether Plaintiff was "an insured" for the purposes of UM coverage. The proof of insurance card contains a section titled, "NAME AND ADDRESS OF INSURED," which lists the Policy number, Plaintiff's name ("Robert A Rodriquez"), the name "Phyllis J Kazhe," and an address. The relevant Policy was effective July 12, 2017. The record reflects three insurance change forms that were submitted during the policy period. On each change form, Plaintiff was listed by name and none of the change forms indicate adding Plaintiff to the Policy—suggesting that Plaintiff was on the Policy from the beginning of the policy period. Neither the insurance card nor the change forms indicate any limitations on the types of coverage available to Plaintiff. These broad statements on the insurance card and in the change forms (1) appear to conflict with the Policy's narrow definition of "insured person" found in the UM coverage part; and (2) do not confine themselves to a particular type of coverage under the Policy, despite the Policy's separation of coverage into four categories. These documents therefore create an ambiguity about the extent to which Plaintiff was an "insured" under the Policy for different types of coverage.

**{13}** Loya's position to the contrary disregards that our inquiry is about ambiguity and the understanding of the reasonable insured. *See Ponder*, 2000-NMSC-033, ¶ 13 (continuing the ambiguity inquiry despite determining that a "the express provisions of the . . . policy" did not support the insured status that the plaintiff sought). Loya argues that the insurance card shows only proof of liability coverage, has no bearing on the UM coverage that is at issue in the present case, and does not "change" the definition of "insured person" contained within the Policy. Our inquiry is not whether the insurance card changed the Policy or what Loya intended for coverage to be based on the Policy. Instead we consider whether Loya's intention was reasonably communicated to those who would seek coverage under the Policy. *See Bird v. State Farm Mut. Auto. Ins. Co.*, 2007-NMCA-088, ¶ 22, 142 N.M. 346, 165 P.3d 343 (noting that though the insurance company's intention was clear, that "intention was never communicated to the [plaintiffs'] family"). The insurance card indicates that coverage complies with the minimum liability insurance that is required by law, instructs that it should be kept in the vehicle "as evidence of financial responsibility" and produced on demand, and advises that the card could be evidence of financial responsibility. While the insurance card indicates that coverage is compliant with minimum liability requirements, the card does not also limit the coverage of the individuals who are identified on the card as "insured" and communicates no distinction between liability and other types of coverage. Under these circumstances, the insurance card, together with the change forms create an ambiguity about the extent of coverage available to Plaintiff.

**{14}**    Neither party provided additional extrinsic evidence as to the circumstances surrounding the execution of the Policy,[1] and so we return to the Policy's terms for guidance. *See Mark V, Inc.*, 1993-NMSC-001, ¶ 12 ("The court may consider collateral evidence of the circumstances surrounding the execution of the agreement in determining whether the langue of the agreement is unclear."). The Policy does not mention the insurance card at all. In relation to "proof of financial responsibility," the Policy states as follows:

> When we certify this policy as proof of financial responsibility, this policy will be:
>
> 1.    provided in accordance with the coverage defined in the New Mexico Mandatory Financial Responsibility Act (the "Act") regarding bodily injury, property damage, or both; and
>
> 2.    subject to all provision[s] of that Act.

This provision is located in the part of the Policy that addresses liability coverage. Regardless, the language indicates that Loya can certify the whole "policy"—and not just the part pertaining to liability—as proof of financial responsibility. The Policy therefore could support Plaintiff's view that the insurance card is proof of all coverage and not just liability coverage and does not resolve the ambiguity created by the insurance card.

**{15}**    The parties do not dispute what the Policy or the insurance card say, which leaves this Court to resolve the ambiguity. *See C.R. Anthony Co.*, 1991-NMSC-070, ¶ 17. Our "construction of an insurance policy will be guided by the reasonable expectations of the insured." *Ponder*, 2000-NMSC-033, ¶ 26 (internal quotation marks and citation omitted). Loya argues that Plaintiff does not claim that he had or proved a subjective expectation of coverage. We conclude, however, that the ambiguities arising from the documents—the insurance card, the change forms, and the Policy—are sufficient to create a reasonable expectation of coverage. In this context and "[b]ased on our consideration of the extrinsic evidence and the policy language in this case," we conclude that Plaintiff was an insured for the purposes of UM coverage and do not reach Plaintiff's remaining arguments. *Id.* ¶ 31.

**CONCLUSION**

**{16}**    We affirm in part and reverse in part.

**{17}    IT IS SO ORDERED.**

---

[1]While Plaintiff offered evidence of post-claim communications with Loya, together with arguments that Loya is bound by the statements of its attorney-agents, we need not consider that evidence to reach our conclusion that the Policy is ambiguous.

**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**ZACHARY A. IVES, Judge**